The American Button-Hole, Overseaming and Sewing Machine Company vs. Gurnee, imp.

Practice and Pleading. *(1) What orders reviewed on appeal from judgment. (2) Joint general demurrer to complaint which states a cause of action against one of the demurrants; rights of the other, after demurrer overruled. (3) Complaint construed. (6 : 3) Presumption on demurrer.*

Contracts. *(4) When taking debtor's note suspends right of action. (5) Surety discharged by extension of time to principal. (6) Contract construed: When debtor's note a payment: Discharge of surety.*

The American Button-Hole, etc., Machine Co. vs. Gurnee, imp.

1. Where an order overruling a demurrer to the complaint as not stating a cause of action, was duly excepted to, and, upon making such order, judgment was rendered against the defendants, their appeal from the judgment brings up the order.

2. If the demurrer, being joint, was properly overruled because the complaint was sufficient as to one of the demurrants, yet, where no cause of action was alleged against the other, the judgment will be reversed as to him, on his appeal. [RYAN, C. J., expresses no opinion on this point, holding that the complaint states no cause of action against either defendant.]

3. The complaint against R. and G. set out R.'s contract with plaintiff for the purchase of goods, etc., a bond of both defendants to secure R.'s performance of said contract, and notes, past due, executed by R. for goods purchased under it; and alleged an indebtedness of both defendants for an unpaid balance due for such goods; and that this balance was embraced in the amount due on said notes; and judgment was taken against defendants jointly, while there is no pretense of any right to recover against G. except upon the bond. *Held*, that the action must be regarded as one for *breach of the bond.*

4. If a creditor, having a right to demand payment, at the debtor's option, in cash or a note at four months (even if such right has accrued by virtue of a contract under seal), accepts the debtor's note at *six* months, this, in the absence of a special agreement to the contrary, suspends the right to demand payment until the end of the six months.

5. A valid extension of the time fixed by contract for payment of a debt, granted to the principal debtor without consent of the surety, releases the surety.

6. R. contracted with plaintiff to purchase and sell its machines, and make monthly "settlements" therefor "with cash or by note at four months" payable in bank; that "upon this basis of settlements," he should have "any reasonable line of credit" for which satisfactory security was furnished; and that when monthly settlements were made "in cash in place of note," an additional discount of five per cent. should be allowed; and he covenanted "to settle and pay for all purchases" made of plaintiff "in accordance with the tenor and conditions of this agreement." Thereupon R. and G. executed a bond to plaintiff, conditioned for R.'s performance of said contract. *Held*, in an action on the bond,

   (1) That a note given by R. on a monthly settlement, and accepted by plaintiff as in fulfillment of the contract, should probably be regarded as *payment* of the amount due on such settlement.

   (2) That the words "reasonable line of credit," in the contract, must be understood of the *quantum* of goods to be furnished on credit, and not as modifying the provision that R.'s notes on monthly settlements should be made payable at four months.

(3) That, the complaint showing that R.'s notes at *six* months were accepted by plaintiff on monthly settlements, it cannot be presumed on demurrer, either that the surety consented to such an extension of the credit to his principal, or that the notes were taken merely as *collateral* to R.'s obligation under the contract; and therefore no cause of action is shown against the surety.

(4) That, upon a strict construction in favor of the surety, he would probably not be liable for any default of R. in paying even a *four-month* note given pursuant to the contract, such notes being apparently taken in *payment* of amounts due on settlements, and payment of the notes themselves not appearing to be covenanted for by the contract. [RYAN, C. J., dissents from this view, construing R.'s covenant to "settle and pay for all purchases," etc., as including a covenant to pay such notes.]

APPEAL from the Circuit Court for *Dane* County.

Action against *John D. Gurnee* and one Rothwell Reynolds, to recover about $500, claimed to be due from them to the plaintiff company for goods, wares, merchandise and machines sold and delivered to Reynolds, and which *Gurnee* bound himself to pay, by a bond set out in the complaint, bearing date May 13, 1871, duly executed and delivered by him and said Reynolds to the plaintiff.

The condition of this bond is, " that if the above bounden Rothwell Reynolds shall well and truly perform, in all respects, the contract on which this obligation is indorsed, executed between him, the said Rothwell Reynolds, and said *American Button-Hole, Overseaming and Sewing Machine Company*, dated this 13th day of May, A. D. 1871, then this obligation shall be null and void; otherwise to remain in full force and effect." The contract upon which this bond is indorsed, is set out at length in the complaint. The only parts of it material to a full understanding of the case are the following: " Settlements for machines, and all parts, accessories, findings, etc., to be made monthly, with cash, or by note at four months, payable at the Union Savings Bank in Cedar Rapids, with current rate of exchange on Philadelphia. Upon this basis of settlements, said party of the second part may

have any reasonable line of credit for which is furnished satisfactory security. . . When monthly settlements are made in cash, in place of note, an additional discount of 5 per cent. will be allowed. . . And said party of the second part agrees to give his best efforts to the introduction and sale of machines manufactured by said party of the first part as aforesaid, and to purchase or deal in no machines, accessories and findings, except such as are supplied by said party of the first part, and will settle and pay for all purchases made of said party of the first part, in accordance with the tenor and conditions of this agreement, conforming in their prices to the price-lists established by said party of the first part."

The complaint, after setting out the contract and bond at full length, further alleges that Reynolds purchased of the plaintiff, under the contract, goods amounting in value to over $1,000; and that, on the 10th of February, 1873, and on the 16th of July, 1873, Reynolds was owing $488.62, over and above all payments made by him, on account of the goods so purchased, and that the same was due to the plaintiff " on and embraced in two certain promissory notes made by said Reynolds to this plaintiff, the first dated 1st of July, 1872, due six months after that date, for the sum of $176.83, and interest and fees of protest, $2.50; and the other dated 1st of August, 1872, also due six months after date, for the sum of $283.34, besides interest and fees of protest, $2.50; both ready to be produced as this court may direct, and which are referred to for greater certainty; and that said notes, at 16th of July, 1873, had been long overdue, and that said Reynolds has not paid the said sum of $488.62 and interest, so due this plaintiff on that day under said agreement, nor any part thereof." It further alleges that Reynolds is irresponsible, has no capital, is brother-in-law of the defendant *Gurnee*, and that the plaintiff trusted him only on the agreement of said *Gurnee* [meaning his bond]; alleges a demand of payment made upon *Gurnee* before suit brought, and his refusal to pay; and

The American Button-Hole, etc., Machine Co. vs. Gurnee, imp.

demands judgment against the defendants for $500, with costs of the action.

To this complaint the defendant *Gurnee*, for himself and his codefendant, demurred, on the following grounds: 1. That several causes of action have been improperly joined, one being a cause of action upon the bond set out in the complaint, and the others being causes of action based upon each of the promissory notes set out in the complaint; and 2. That said complaint does not state facts sufficient to constitute a cause of action. The court below overruled the demurrer, and rendered judgment against both defendants for the sum claimed in the complaint. The defendant *Gurnee* appealed from the judgment:

*J. D. Gurnee*, appellant, in person:

1. Under the contract between the plaintiff and Reynolds, notes taken at settlement must be held to have been taken in full payment, satisfaction and extinguishment of the contract. The case is entirely different from *Paine v. Voorhees*, 26 Wis., 530, where the evidence clearly rebutted any presumption that the remedy on the contract was to be suspended during the currency of the notes. In this case, if it had been the understanding that the notes were to be given as *collateral* to the amount due on the contract, that fact should have been stated in the contract; and the omission to state it, in view of the express provision for giving the notes, raises a presumption that they were received in extinguishment of the amount due on the contract. Again, there is no averment that the notes were taken merely as collateral to the contract, but nonpayment of them is expressly charged as a breach of the contract. *Weed Sewing Mach. Co. v. Oberreich*, 38 Wis., 325. Moreover, the legal signification of the word "settlement" is *payment*. *National Bank v. Norton*, 1 Hill, 572; *Stilwell v. Coope*, 4 Denio, 225; *Jones v. Moore*, 5 Binney, 573; *Pinkerton v. Bailey*, 8 Wend., 600. By the terms of the contract, settlements were to be "with cash or by note;" and the

word " settlement " must have the same meaning in connection with the word " note " as with the word " cash," and that meaning can only be *payment*. A settlement in either form satisfied the contract. 2 Parsons on Con., 653–4. The pre-sumption is, that the notes were delivered on the day of their date (Parsons on B. & N., 49); and it must be presumed from their acceptance by the plaintiff, that they were delivered on the day of settlement. But even if they were executed after the day of settlement, the right of election then resting with the plaintiff (2 Parsons on Con., 651, 657; 2 Chitty on Con., 1061, and note; 1 Addison on Con., § 319, with authorities there cited; 1 Waits L. & P., 941; Co. Litt., 145 a), their accept-ance was conclusive evidence of plaintiff's election to take the notes, and his waiver of the cash; and the election, once made, was irrevocable. *Rugg v. Weir*, 111 E. C. L., 469. The second clause of the contract (" and will settle and pay for all purchases made by the said party of the first part in accordance with the tenor and conditions of this agreement ") is made subordinate and subject to the first clause, which prescribes specifically the manner in which payments are to be made. The " tenor and conditions of the agreement " were, that Reynolds should settle and pay for the machines, etc., *monthly, with cash or by note at four months*. The contract between Reynolds and the plaintiff was therefore completely performed by the exe-cution of the notes by Reynolds on the day of settlement, and their acceptance by plaintiff. There are no words in the con-tract or bond obliging the surety to pay notes given upon settle-ments; and the liability of a surety cannot extend beyond what is expressed in his contract. *Miller v. Stewart*, 9 Wheat., 702–3; *U. S. v. Corwine*, 1 Bond, 339. 2. Any extension given to the principal of the time for payment, without consent of the surety, discharges the surety's liability. 2 Lead. Cas. in Eq., 356; *Rees v. Berrington*, 2 Ves. Jr., 540; *Bangs v. Strong*, 7 Hill, 250; *Fellows v. Prentiss*, 3 Denio, 512; *Bangs v. Mosher*, 23 Barb., 478; *Hart v. Hudson*, 6 Duer,

294, 304–5; *King v. Baldwin*, 2 Johns. Ch., 554; *Tobey v. Barber*, 5 Johns., 68; *Putnam v. Lewis*, 8 id., 389; *Appleton v. Parker*, 15 Gray, 173; *Riley v. Gregg*, 16 Wis., 671; *Brookins v. Shumway*, 18 id., 100. Where one gives for a preëxisting obligation notes payable at a date later than that prescribed by such obligation, this is an extension of the time for payment. 2 Pars. on Con. (ed. of 1857), 197–8; *Myers v. Welles*, 5 Hill, 463; *Dorlon v. Christie*, 39 Barb., 610; *Williams v. Starr*, 5 Wis., 548; *Blunt v. Walker*, 11 id., 350; *Ford v. Mitchell*, 15 id., 308; *Matteson v. Ellsworth*, 33 id., 502; *Weed S. M. Co. v. Oberreich, supra.* Plaintiff, being entitled to receive from Reynolds cash or four months' notes, took his notes at six months without appellant's knowledge or consent. This discharged appellant's liability. It is said, however, that there was *no valuable consideration* to support an agreement to extend the time; but such a consideration is fairly inferable from the complaint. The original contract did not provide that the notes should draw interest. It would seem that there was due on the contract at the settlement made July 1, 1872, $176.83, and at that made August 1, 1872, $283.34, making an aggregate of $460.17; that Reynolds was entitled to discharge the indebtedness by paying $437.17 in cash (making the five per cent. deduction provided for by the contract), or by giving his four months' notes *without interest* for the aggregate of $460.17; but that plaintiff accepted in lieu thereof his notes for the aggregate last mentioned, at six months, *with interest.* The principal and interest on both notes, on the 16th of July, 1873, amounted to $488.62; and the complaint claims that sum as due plaintiff from that day, with *interest upon the interest* included therein, as well as upon the principal. This shows a valuable consideration and a valid extension. *Chute v. Pattee*, 37 Me., 102; *Bailey v. Adams*, 10 N. H., 162; *Brooks v. Wright*, 13 Allen, 72; *McComb v. Kittridge*, 14 Ohio, 348; *Hamilton v. Winterrowd*, 43 Ind., 393. See, also, *Appleton v. Parker, King v. Bald-*

*win, Tobey v. Barber, Putnam v. Lewis* and *Rees v. Berring-ton, supra.*

For the respondent, a brief was filed by *Smith & Lamb,* and the cause was argued orally by *Mr. Lamb.* They contended, 1. That if the complaint states a good cause of action against *either* defendant, the joint demurrer was properly overruled. *Webster v. Tibbitts,* 19 Wis., 438, 448–9; *Willard v. Reas,* 26 id., 540, 544; *Truesdell v. Rhodes,* id., 215; *Peabody v. Wash. Co. Mut. Ins. Co.,* 20 Barb., 339; *People v. Mayor,* 28 id., 240. 2. That the complaint shows a breach of the bond. If the language of the agreement with Reynolds were simply that he should give his notes, the law would construe the contract to mean that he should *pay* as well as give them, and hold nonpayment at maturity a breach of the bond. 2 Parsons on Con., 656, 684; *Dixon v. Holdroyd,* 7 Ellis & B., 903. But Reynolds' agreement is, that he will "settle and pay for all purchases." 3. That if plaintiff gave Reynolds a valid extension of the time for payment by taking his notes at six months, this did not discharge the surety, because it was stipulated for in the contract. The agreement and bond must be construed together as parts of the same transaction. The agreement provides that, upon the basis of the monthly settlements there required, Reynolds may have *any reasonable line of credit* for which is furnished satisfactory security; and the bond furnishes satisfactory security to the amount of $500. The words "*line* of credit" do not mean "*amount* of credit;" for the *amount* was *fixed* then and there by the bond, while the *line* of credit was expressly left undetermined, except that it must be "reasonable." Reynolds could legally demand credit to the amount of the bond; he could not demand more without furnishing satisfactory security for a larger amount; and the amount of such security furnished would always define and limit the *amount* for which he could legally demand credit. But *some* meaning must be given the words "line of credit" (*Harrington v. Smith,* 28 Wis., 43);

and the only other rational meaning is, *time* of credit. This is consistent not only with the ordinary use of the word " line," to denote extension, length, a continued series or succession (Worcester, Webster), but also with the situation of the parties, and the object they had in view in the contracts. It is admitted by the pleadings, that Reynolds " had no credit or means to enter on said business," and that " plaintiff would not trust him with property without security." He was bound to settle at the end of each month by paying or giving his note at four months, even if he had not sold, or had not collected his pay for, any of the goods. If, at the end of four months from the first settlement, he had not sold the goods, or had not collected his pay for them, he would be at the end of his business. To break up the business at the end of four months might be disastrous both to him and to *Gurnee*. A provision in the contract for renewals, from time to time, would obviate the difficulty. To make the vendor safe, a guaranty of ultimate payment was necessary; and the necessary element of elasticity in credit to Reynolds was secured by the provision quoted; the fair construction of which is, that up to the amount satisfactorily secured (in this case $500), he was to have any reasonable extension of the *time* of credit which he might require. The time of credit here given, not being unreasonable, was within the very terms of the contract. 4. That, as the complaint shows, and the demurrer virtually admits, a breach of the contract, the surety could defend only by showing, (1) an agreement of plaintiff to extend his principal's time; (2) a valid consideration therefor; and (3) that it was without the surety's consent. But none of these appear from the complaint. The mere fact that the notes were given at six instead of four months, and were not returned by the plaintiff, does not show an agreement of plaintiff to extend. *Elwood v. Deifendorf,* 5 Barb., 408–9; *Williams v. Townsend,* 1 Bosw., 416; *Burke v. Cruger,* 8 Texas, 66, 72. [Counsel cited numerous authorities to the point that such an agree-

ment, to be binding, must be supported by a consideration.] None of the elements of this defense being supplied by the complaint, the appellant could avail himself of it only by alleging and proving them. *Carter v. Turner,* 5 Sneed, 178; *Brown v. Phelon,* 2 Swan, 629; *Hemes v. Platts,* 12 Gray, 143; *Thayer v. Connor,* 5 Allen, 25; *Gray v. Gardner,* 17 Mass., 188; *Kidder v. Norris,* 18 N. H., 532; *Warren v. Chickasaw Co.,* 13 Iowa, 588; *Dykers v. Townsend,* 24 N. Y., 57; *Hill v. Beach,* 1 Beasley (N. J.), 31; *Zerbe v. Miller,* 16 Pa. St., 488, 497; *Bowser v. Bliss,* 7 Blackf., 344; *Brown v. Woodbury,* 5 Ind., 254; *Hicks v. Martin,* 9 Mart. (La.), 47. 5. Counsel further contended that the case falls within the principle that "it is no defense at law to an action against a surety on a bond or other instrument *under seal,* that by parol agreement time has been given to the principal" (Burge on Suretyship, 212, 213; Pitman on Principal and Surety, 38 L. L., 187); and that when a party is bound by a contract under seal, the taking of a note or bill by the creditor does not suspend the remedy on the specialty, unless the note or bill is paid. 2 Parsons on B. & N., 163; *Drake v. Mitchell,* 3 East, 251; *Curtis v. Rush,* 2 Ves. & B., 416; *Steptoe v. Harvey,* 7 Leigh, 501; *Williams v. Terrell,* 7 Humph., 551; *Allen v. Jaquish,* 21 Wend., 631–2; *Gahn v. Niemcewicz,* 11 id., 320–1; *Tate v. Weymond,* 7 Blackf., 240; *Carr v. Howard,* 8 id., 190–2; *Paine v. Voorhees,* 26 Wis., 522.  6. Counsel further argued that if, as before shown, the mere giving of four months' notes at settlement did not satisfy the agreement or bond, but both defendants would remain liable until the amount due on such settlement was paid, it inevitably results that the notes to be given by Reynolds were only collateral to the sealed contracts. This being so, the six-month notes described in the complaint were only collateral, and the case is like *Paine v. Voorhees, supra.* Besides the cases on this point referred to in the opinion in that case, counsel cited *Wyke v. Rogers,* 12

Eng. L. & E., 166; *Burke v. Cruger, Williams v. Townsend,* and *Gahn v. Niemcewicz, supra.*

TAYLOR, J. Upon this appeal this court may review the decision of the court below overruling the demurrer of the appellant to the complaint of the respondent, such order having been duly excepted to by the appellant. This court held in this case, upon a former appeal, that, after final judgment, the only way of reviewing the correctness of the order overruling a demurrer was by an appeal from the judgment, and if an appeal were taken from the order after final judgment was entered, such appeal must be dismissed. *American Button-Hole, Overseaming and Sewing Machine Company v. Gurnee,* 38 Wis., 533. See, also, *Tronson v. Union Lumbering Company,* id., 202.

The questions to be decided on this appeal are: 1. Does the complaint state a cause of action against the appellant? 2. If it does not state a cause of action against the appellant, and does state a cause of action against Reynolds, can the appellant, after having joined with his codefendant in a demurrer to the complaint on the ground that the complaint does not state facts sufficient to constitute a cause of action, which demurrer was properly overruled by the court below for the reason that the complaint states a cause of action against his codefendant — upon an appeal from the final judgment against both defendants, reverse the judgment as to himself because the complaint does not state a cause of action as to him as well as against his codefendant? In determining these questions, we hold that the complaint must be treated as an action to recover against both of the defendants, for a breach of the condition of the bond set forth in the complaint, and which was in fact executed by both of them. It would seem but reasonable and just to so hold in an action claiming a joint judgment against both defendants for the same sum of money, when it is clear that, unless the action be upon the bond set

forth, there is no pretense of a right to recover against the appellant. The respondent has very clearly indicated in the complaint that the action is on the bond. It is true, he sets forth the contract, and alleges that there was money due on it from Reynolds to the plaintiff, for which notes were given by him, and that the notes are past due and unpaid; but he further alleges a demand of payment by the appellant of the amount due from Reynolds, and a refusal to pay, and that an action has accrued to the plaintiff in the premises against said defendants therefor. The judgment entered is against both the defendants, and it recites, "that the defendants, by their demurrer, admitted the breaches of the bond sued on as alleged in the complaint, and that the notes therein mentioned were not paid, which notes were given for goods to secure the payment of which said bond was given, and that more than five hundred dollars is due on account of said breaches of said bond, and the court adjudges the damages ascertained at the sum of five hundred dollars, and execution is hereby awarded for five hundred dollars damages and costs," etc.

After these allegations and claims in the complaint, and recitals in the judgment rendered, it is too late for the respondent to say that the complaint and judgment, so far as it affects the defendant Reynolds, may be considered a judgment upon the claim of the respondent either upon the notes or for the purchase price of the goods delivered under the contract.

Does the complaint state a cause of action against the appellant? We think not. *First*, upon the ground that the complaint clearly shows that the respondent, contrary to the agreement made with the defendant Reynolds, by the terms of which he was to settle monthly, and either pay in cash for the goods sold to him or give his note for the amount unpaid at four months, took notes due in six months, and there is no allegation that this was done with the knowledge or consent of the appellant, nor is it alleged that there was any agreement between the respondent and the defendant Reynolds,

that the notes for six months were taken as collateral security for other notes which had been given payable in four months, or that they were given as collateral for like sums of money for which notes ought, by the terms of the contract, to have been given for four months, and were not given. According to all the cases, an extension of credit given to the principal debtor beyond the time fixed by the contract for the payment of the debt, which suspends the right of bringing an action against him until the expiration of the extended term, when done without the consent of the surety in such contract, releases the surety. This rule has been held by this court to apply to the sureties in a bond similar to the one upon which the present action is founded. *Weed Sewing Machine Company v. Oberreich*, 38 Wis., 325. The counsel for the respondent do not controvert the rule of law laid down in the case above cited, nor that the law is as above stated, but insist that, by the terms of the contract between the respondent and Reynolds, for the performance of which the appellant gave his bond as surety, the respondent had the right to extend the credit beyond the four months in his discretion; and they make a very able argument to sustain their position, based upon the following clause in the contract: " Said party of the second part may have any reasonable line of credit, for which is furnished satisfactory security." It is urged that these words modify the previous agreement that Reynolds "shall settle monthly with cash or notes at four months," etc. The point made is, that the words " line of credit" mean time of credit, and do not refer to the *quantum* of goods which may be purchased on credit. Notwithstanding the force of the argument made by the respondent's counsel, we are inclined to hold that the words " line of credit," as used in this contract, have reference to the *quantum* of goods to be furnished, and were not intended to change the express provision for credit just before fixed in the contract. We are the more inclined to do this, as this phrase, as well as the phrase " line of

goods," are mercantile ones, not long in use, and, so far as we have been able to ascertain, the phrase "line of goods" is used by merchants when speaking of the variety and quantity of goods, or the variety and quantity of some particular kind of goods they have on hand for sale; and the words "reasonable line of credit" ought, in like manner, to be construed as applicable to quantity or amount of credit, rather than length of credit, and especially in this contract, in which a fixed limit to the credit is prescribed in the same part of the contract.

It is also argued that there is no evidence that the notes given at six months were not given as collateral to the debt due the respondent, and did not therefore extend the time of payment. As stated above, there is no allegation in the complaint that other notes were given due in four months, for which these six months' notes were given as collateral, nor that they were given as collateral security for the payment of like sums due in four months, for which no notes at four months were given. It is fairly to be inferred from the allegations of the complaint, that these notes, which both bear date the first of the month, were given on monthly settlements, instead of the notes which the contract called for at four months. If they were so given, then we think there can be no doubt that, under the provisions of this contract, no action could be brought for the value of the goods sold, and which were unpaid for at the date of the settlement, and for which value these notes were given, until the notes became due. The contract provides that Reynolds shall make monthly settlements for goods purchased, and pay with cash or notes at four months. Now if he settles, and gives, and the respondent accepts, a note for six instead of four months, then the claim of the respondent for the sum due at the time of settlement is fully adjusted, and the time for its payment fixed by the note given. If A. has a current account against B., and they meet and settle the account, and B. gives A. his note

JANUARY TERM, 1878.                63

The American Button-Hole, etc., Machine Co. vs. Gurnee, imp.

payable in six months or a year for the balance found due, would there be any doubt that A. could not bring an action to recover the amount admitted to be due on such account, until the note became due? We are clearly of the opinion that he could not. This is not in conflict with the decisions of this court which hold that the giving of a note by a debtor to his creditor is not a payment of the debt, unless it be expressly agreed by the parties that it shall be received as payment. An examination of the cases will show that this court holds that, unless the note be expressly given and received as a collateral security for the debt, no action can be brought upon the original debt until the note given has become due; the rule being, that the giving and accepting of the note does not extinguish the original debt, but suspends the right to bring an action upon the same until the note becomes due. In the case of *Paine v. Voorhees*, 26 Wis., 530, Justice COLE says: " There are certain securities which are said to imply an agreement for the suspension of the remedy on the original debt on account of which they are taken. Thus, if a note is given on a simple contract debt, during the currency of the security the original remedy is suspended." See cases there cited. In *Blunt v. Walker*, 11 Wis., 354, Chief Justice DIXON says: " It is a mistaken idea of counsel that the giving of a promissory note by the debtor operates as an absolute payment or extinguishment of the original debt, or changes its nature. This is not so. Unless the note be expressly given and accepted in satisfaction and discharge of the debt, it only suspends the remedy upon it during its currency, and, upon its dishonor or nonpayment, if in the hands of the payee, it may be disregarded, and suit brought for the original indebtedness." In *Matteson v. Ellsworth*, 33 Wis., 502, the court say: " The taking of the note only suspends the action on the contract until the note is due. But when the term of credit has expired, the creditor may bring his action and recover either upon the original consideration or on the note, as he

may elect." Some of the cases hold that when the original debt is due upon a sealed instrument, the taking of a note payable at a future day does not prevent an action upon the sealed instrument during the currency of the note. In this case, however, although the contract appears to be sealed, it especially provides that notes shall be given for the sums which may be due thereon monthly upon settlement. When, therefore, a settlement is made under the contract, and a longer credit given, there can be no doubt that the parties intended to extend the credit. The authorities sustaining this proposition are both numerous and satisfactory. *Myers v. Welles*, 5 Hill, 463; *Kendrick v. Lomax*, 2 Cromp. & Jer., 405; *Walton v. Mascall*, 13 M. & W., 452; *Baker v. Walker*, 14 id., 465; *Price v. Price*, 16 id., 232; *Fellows v. Prentiss*, 3 Denio, 518; *Putnam v. Lewis*, 8 Johns., 389; *U. S. v. Howell*, 4 Wash., 620. The complaint showing that the respondent did take the notes of the defendant Reynolds upon monthly settlements, due in six months, for the sums he now seeks to recover of the appellant upon his bond as security for the performance of the contract by Reynolds, without affirmatively showing that he did not extend the time of payment and suspend his right of action against Reynolds during the currency of the notes, the presumption is that his right of action was suspended, and thereby the appellant was released.

The appellant argues with great force, that, construing the contract and bond strictly against the respondent, in favor of the surety, there is no breach of the bond shown in the complaint. It will be seen by an examination of the complaint, that it is nowhere alleged that Reynolds did not make monthly settlements as provided for in the contract, nor does it allege any other breach of the contract, unless a failure to pay the notes taken upon the settlements is a breach. Is the failure to pay the notes given on settlement a breach of the bond? The condition of the bond is, in brief, that Reynolds shall perform, in all respects, his contract upon which the bond is in-

dorsed. Is there any agreement in the contract that Reynolds will or shall pay the notes given at maturity? It is urged with great force, that when Reynolds has made his settlements and given his notes, he has, so far as the contract requires him to make payments for the goods purchased, performed his contract; that after the notes are so given and received, there is no further remedy against him upon the contract; and that the only remedy of the respondent thereafter is by action upon the notes. We are strongly inclined to hold that this is the proper construction of the contract, and that, under the terms of the contract, the notes received are received in payment of the sums found due and unpaid upon the monthly settlements. The terms of the contract indicate that it was the intention of the parties that the notes should be payments. The notes are to be made payable at a bank, with exchange on Philadelphia. The contract provides for a credit only upon condition that notes are given. It would be clear that if Reynolds refused to give the notes, an action could be brought immediately. The contract requires that settlements should be made monthly, and, upon settlement, the notes are to be given. These words " monthly settlements " would seem to intend a complete adjustment of the account, and payment either in money or notes. The contract says, "settlements with cash or by note." If the settlement be with cash, that ends it — it is fully paid and discharged. Was it not clearly intended that the settlement by note should also be a payment and final adjustment of the account to date, and a close of the same, and that the respondents would thereafter rely solely upon the notes? Suppose, in this case, notes had been given for four months as provided in the contract, and the statute of limitations had run against the notes: could the respondent have brought the notes into court and sustained an action upon the sealed contract, and claimed that the action was not barred by the statute? We think not. It will be noticed that there are no provisions in the contract by which the respondent

agrees in terms to sell goods to Reynolds upon a credit of four months, and that notes shall be given for the amount so sold on credit. It simply provides that for all goods sold, monthly settlements shall be made by cash or notes at four months, etc.; and again, that when monthly settlements are made in cash, in place of notes, an additional discount of five per cent. will be allowed. No distinction is made between settlements with cash or with notes, except that when a note at four months is given, interest is in fact to be paid at the rate of fifteen per cent. per annum. All the language used would indicate that the parties intended that their transactions should be closed at the end of each month; and that the bond was given to secure this regularity of settlement, and for no other purpose. The provision that, if settlements are made with notes, the purchaser shall absolutely agree to pay, at the end of four months, five per cent. more than if made in cash, or at the rate of fifteen per cent. per year, strengthens the argument in favor of the construction that the notes were to be in payment of the debt.

Some of the provisions in the third clause of the contract strengthen this view of the case. It is there provided how the contract may be ended by the parties. It may be ended by mutual consent, or by notice of either party to the other; and the respondent may put an end to it if it appears that Reynolds is not likely to meet his obligations at maturity. "Obligations" undoubtedly refers to his notes given. This lessens the force of the argument, that if Reynolds gave his notes he could get a large amount of goods during the first five months, for which the bond of the respondent would be no security. If, after the first settlement, it should appear that Reynolds was not likely to succeed in the business, the respondent had the power to put an end to the contract, and refuse to furnish more goods. We are clearly of the opinion that the construction above given to the first clause of the contract is strictly according to the letter of it, and does not

JANUARY TERM, 1878.                67

The American Button-Hole, etc., Machine Co. vs. Gurnee, imp.

do violence to its spirit, and that the appellant, who is a surety, is entitled to have that construction given to it.    It is urged that if, under the first.clause of the contract, Reynolds would have performed on his part by settling and giving his notes, yet under the second clause he expressly agrees to pay the notes.    One answer to this is, that the words used in the second clause are superfluous in order to fix the obligation of Reynolds to pay his notes.    When he gives the notes he expressly promises in the notes themselves to pay them.    A second and more conclusive answer is, that the words in the second clause, "will settle and pay for all purchases made of the party of the first part, in accordance with the tenor and condition of this agreement," evidently refer to the settlements and payments referred to in the first clause, viz.: that he will make monthly settlements, and pay in cash or notes, as prescribed in the first clause of the contract.    If, under the first clause, the notes are to be received as payment, the second clause does not change its meaning or add to the contract, except that Reynolds there expressly promises to do what is before stipulated for in the first clause.

Interpreting the contract as above indicated, no breach of the contract is shown in the complaint as against either of the defendants, and the demurrer should have been sustained as to both.

Admitting, however, that this interpretation of the contract is wrong, especially as against Reynolds, and that by its terms he not only promised to give his notes on settlement, but to pay them at maturity, and that there is therefore a breach of the condition of the bond as to him shown in the complaint, is the appellant estopped, on this appeal from the final judgment, from alleging that no cause of action is stated in the complaint against him, because he united in the demurrer to the complaint with Reynolds, stating as one ground of demurrer that the complaint does not state facts sufficient to constitute a cause of action, which demurrer was properly

overruled for the reason that it states a cause of action against Reynolds? Can this court consistently hold that the order overruling the demurrer was rightly made, because the complaint stated a cause of action against Reynolds alone, and at the same time reverse the judgment as to the appellant, against whom no cause of action is stated?

It has been held in this court repeatedly, that, even after an appearance and answer, and without taking any exception, if the complaint does not state a cause of action against the defendant, or against any one of two or more defendants, on an appeal to this court exception for that cause may be taken for the first time, and the judgment will be reversed as to those parties against whom the complaint does not state a cause of action. *K—— v. H——*, 20 Wis., 239; *Smith v. Weage*, 21 id., 440; *S. C.*, 22 id., 438. We hold that one of two or more defendants, who has appeared in the court below and joins with other defendants in a demurrer to the complaint because it does not state a cause of action against all the defendants, and whose demurrer is overruled because the complaint does in fact state a cause of action against some defendant or defendants other than himself, is not estopped, upon an appeal from a final judgment against him, from alleging as error that the complaint does not state a cause of action against him. The ruling upon his first demurrer was rightly made, because it was too broad; but it is in no sense *res adjudicata* that the complaint states a cause of action against him. The first ruling was simply that a cause of action was stated against some one or more of the defendants, not that it stated a cause of action against all of them. The party demurring in that case admits, for the purpose of the trial of the issue of law raised, that the allegations of the complaint are true, and, according to the rule of law applied by the courts to such a joint demurrer, it must be overruled if the facts state a cause of action against any one of a dozen defendants, if there be so many. The party so demurring does not ask the court to pass upon the question as

to whether the complaint states a cause of action against him alone. Under our statute regulating pleadings, it is provided that this objection to the complaint is not waived by omitting to demur in form to the defective pleading, but that the objection may be taken *ore tenus* on the trial. I suppose it would hardly be urged, if, when the plaintiff opened his case at the trial, the counsel should make an objection, for all the defendants jointly, when there were two or more, that the complaint was defective because it did not state a cause of action against the defendants, and the judge should overrule the objection and hear the evidence, that upon the close of the case the judge would not hear an objection from one of the defendants, that the complaint did not state a cause of action as to him, on the ground that he had already decided that it did. If the objector went further, and objected that no cause of action was proved against him, clearly the court would have to decide upon this last question without regard to the former decision as to what the complaint stated. In the case at bar, the appellant has simply admitted the facts set out in the complaint. The court has not decided that they state a case against him, but simply that they state a case against his co-defendant. No proof is offered except the defendant's admissions; and the plaintiff demands judgment on this evidence. May not the defendant object now that judgment should not be rendered against him because the evidence proves no cause of action against him? We are clearly of the opinion that he may, and that the court has no right to refuse to hear that objection because of his objection to the sufficiency of the complaint as against all the defendants.

"It is an admitted principle, that a demurrer admits all the facts *well pleaded*, and demands the judgment of the law upon those facts. And when the judgment is pronounced, it must be conclusive upon the parties, and as effectually determine the litigation as if judgment had been rendered on a verdict. But there is this difference to be observed between judgments

on verdicts and judgments on demurrer: the former are certain as to what was intended to be decided, however inartificially drawn, whereas the latter are often of very doubtful construction, leaving it difficult to determine whether the judgment was intended to sustain the demurrer as to all the matter demurred to, or only partially. In a judgment on demurrer, if the reason to be collected from the record appears to have been matter of form, it cannot be pleaded in bar; when a judgment is rendered on demurrer, and the parties are still left in court, it must be obvious that such judgment cannot be available as an estoppel, nor preclude a trial on the merits." Herman's Law of Estoppel, pp. 99, 100. Applying this rule to the case at bar, we see no reason for holding that the appellant is estopped from alleging that neither the complaint nor the evidence shows or proves a right to judgment in favor of the plaintiffs against him. The court below overruled his demurrer because of the technical rule, that, by joining with the other defendant in his demurrer, it must be overruled as to him as well as to the other. The question whether it states a cause of action against him as well as against the other, is still an open question for the decision of this court.

The judgment must be reversed as to the appellant.

RYAN, C. J. I concur in this judgment, on the ground that the extension of credit to Reynolds, from four to six months, released the obligation of his surety, the appellant. But I cannot assent to the position that the mere giving of the four months' notes by Reynolds would be a full performance of the contract on his part, or would discharge the appellant from liability on his bond for Reynolds' performance of it.

The contract provides that Reynolds should settle monthly, with cash or four months' note, and I have no doubt that notes so given in settlement would operate by way of present payment. But notes given under the contract are Reynolds'

promises to pay for goods purchased; and I doubt whether this clause in the contract, by itself, would be fully satisfied without payment of the notes. But a later clause in the contract appears to me to put this beyond doubt. This latter clause provides that Reynolds should settle *and* pay for all purchases. If this were not intended to include payment of the notes, the word *pay* is irrelevant. It is not used in the previous clause requiring Reynolds to settle by cash or note. It is evidently used here in the sense of payment in money, payment at maturity of notes given upon monthly settlements. I cannot but think that it would be an unwarranted and frivolous construction of the contract, to hold that this clause would be satisfied by the mere giving of notes not paid at maturity. The two clauses are essentially different in language; it is judicial duty, if possible, to give full effect to both, and to every word used in each. And it appears to me that, while the first clause provides for monthly settlements by notes, the second provides for the payment of the notes given. Were this otherwise, the appellant's bond would be of little more value than waste paper.

And the bond being for Reynolds' performance of his contract in all respects, I cannot but think that the appellant would be liable for the payment of four months' notes given by Reynolds under the contract.

Whether the demurrer were joint or several, I think it was well taken. The complaint discloses no cause of action, even against Reynolds. It shows no breach of the contract. The enlargement of Reynolds' credit not only operated to discharge his surety, the appellant, it also operated to waive, as against Reynolds, the provision of the contract to give four months' notes. The notes mentioned in the complaint were not given in pursuance of the contract. They were given and taken outside of the contract, waiving the terms of the contract. And, so far as the complaint discloses, the contract was performed or waived. Reynolds may remain liable on his notes, but, even as to him, the contract does not appear to be broken, and

the bond for its performance appears to be discharged. Neither Reynolds nor the appellant was liable on their joint bond.

With this view, I regard the discussion of the effect of the demurrer, in the opinion of the court, as irrelevant to the case, and I therefore do not feel called on to express either con- currence in it or dissent from it.

*By the Court.*— The judgment of the circuit court is re- versed as to the appellant.

LYON, J., took no part.

A motion for a rehearing was denied.