Town of Merton, Plaintiff and Respondent, vs. Hansen, Defendant: Fidelity & Casualty Company of New York, Defendant and Appellant.

*January 6—February 4, 1930.*

For the appellant there was a brief by *McGovern, Curtis, Devos & Reiss* of Milwaukee, and oral argument by *F. E. McGovern.*

For the respondent there was a brief by *Salen & Brenner* of Waukesha, and oral argument by *Leon L. Brenner* and *Vincent J. Collins* of Waukesha.

CROWNHART, J.   The complaint shows that on July 1, 1927, the defendant Hansen applied to the plaintiff town for a permit to traffic in non-intoxicating liquors and beverages, and that said Hansen as principal, and the Fidelity & Casualty Company of New York as surety, executed their certain bond and filed it with the town clerk on July 16, 1927, which was approved by said town board, conditioned upon the defendant conforming strictly to the laws of the state and rules and ordinances of the town.

The defendant Hansen breached the conditions of said bond, and the plaintiff brings this action to recover the penalty of the bond.

A general demurrer was interposed to the complaint by the defendant surety, which was overruled by the court, and defendants appeal.

The defendant surety contends that the plaintiff town had no authority to require a bond of Hansen, and that the bond is therefore without consideration and void.

The permit was granted pursuant to sec. 165.31, Stats. 1927, which was a part of the prohibition law of 1921, popularly known as the Severson law. That law was carefully prepared and considered by the legislature for the effective enforcement of the Eighteenth amendment to the

federal constitution. It ushered in a completely new scheme of dealing with a very old problem. The scheme forbade the sale of all intoxicating liquors for beverage purposes. Liquors of less than one half of one per cent. alcoholic content were defined as non-intoxicating and the traffic in such liquors or beverages was permitted. But it was recognized that places for sale of non-intoxicating liquors might be used as a cover to violate the prohibition law, and therefore the act provided that such places should be open to the inspection of peace officers at all reasonable hours, and further provided that the person operating the same should have a permit. To that end the act provided that each town board *shall* grant licenses to such persons as they *deem proper* for the sale of non-intoxicating liquors. The sale of non-intoxicating liquors as such was a legitimate business, and subject to licensing, solely to prevent the sale therein of intoxicating liquors. The town board had no discretion in licensing such persons except to determine if the applicant was a *proper* person to conduct such a business, that is, a person fit, honest, or reputable,—of good character. The statute did not make the giving of a bond necessary, and the town board was not authorized to require a bond. The situation was different than under former laws regulating the sale of intoxicating liquors. Then the legislature uniformly required the applicant to give a bond. The business of itself was an evil to be curbed and regulated. But with the sale of wholly innocent beverages there was no reason to lay any burdens upon the dealer not required of merchants generally, except to prevent traffic in forbidden beverages. Such dealers had not been required to be licensed theretofore.

The Severson law was a general state law completely detailing the plans for enforcing prohibition, and all the old laws regulating the sale of malt and intoxicating beverages were repealed without any reservation or saving clause. It seems plain that towns were not permitted to impose any

other burdens upon the persons engaged in the traffic in wholly innocent beverages, other than as specifically provided in the act. They were permitted to deny licenses on one ground, and one ground only, *i.e.* that the board should deem the applicant an improper person to conduct such business. A very proper person, such as a poor woman with a good character and reputation, or with a good experience in that business, might find it a hardship to put up a bond, while a very improper person, of bad character and reputation, or with an unfavorable experience in the sale of intoxicating liquors, might readily furnish a large bond.

We conclude from an examination of the whole prohibition act, and considering its general purpose, that the legislature did not intend that the town should require a bond of an applicant for license to traffic in non-intoxicating beverages.

The bond, therefore, was wrongfully exacted from the licensee, without consideration, and was void. *Comm. v. Ledforth,* 129 Ky. 190, 110 S. W. 889; *State v. Heisey,* 56 Iowa, 404, 9 N. W. 327; *Hoeg v. Pine,* 143 Iowa, 243, 121 N. W. 1019; *Dudley v. Rice,* 119 Wis. 97, 95 N. W. 936. Nor is the bond valid at common law. *Aucoin v. Guillot,* 10 La. Ann. 124, and cases cited *supra.* The licensee obtained no benefits by giving the bond. He was entitled to the license without such bond. Neither he nor his surety is estopped from denying liability thereon. *People v. Federal Surety Co.* 336 Ill. 472, 168 N. E. 401.

The only requirement of the law was that the applicant should be a proper party. That being so, it was against public policy for the town board to be influenced by any other consideration in issuing a license. By demanding a bond it well may be that the board waived the very essential fact of character necessary to the applicant under the statute. Thus the bond may have been substituted for character, contrary to the legislative policy, and the result in this case strongly indicates that such was the fact. Certainly the

licensee lacked the character to be a proper person to conduct the business for which he was licensed.

In the case of a town board laying out a highway, it was held to be without authority to consider any other inducement than the statutory requirements. *State ex rel. Dosch v. Ryan,* 127 Wis. 599, 106 N. W. 1093. By analogy the same principle applies in the instant case. There Mr. Justice WINSLOW said:

"Highways are only to be laid out when the public good will thereby be promoted. Private considerations or inducements cannot rightly enter into the question in any degree. If private individuals with special interests were allowed to bargain with public officers who are exercising this important and sovereign power, and to offer inducements of any kind tending to influence their free action, the interests of the public would be at once in jeopardy. Not only are such bargains void as against public policy, but official action based thereon ceases to be based solely upon the public welfare, and becomes tainted with some degree of private interest.

"To approve of such a course would be to open the door to injustice and favoritism. *State ex rel. Curtis v. Geneva,* 107 Wis. 1, 82 N. W. 550; *Shelby v. Miller,* 114 Wis. 660, 91 N. W. 86. It avails not to say that the majority of the commissioners testify that they would have decided to lay the road had the bond not been given. They did not do so. No decision was made until after the bond was given. The decision is conclusively shown to have been, in part, based upon the fact that the bond had been given. No nice separation of motives is possible. There is safety only in the entire prohibition of such transactions."

In the instant case it is admitted that the decision of the town board was influenced by the giving of the bond, and to the extent to which it was so influenced the legislative requirement was ignored. "There is safety only in the entire prohibition of such transactions."

*By the Court.*—The order of the circuit court is reversed.