No: 35,195

THE STATE OF KANSAS, ex rel. FRANK D. HEDRICK, JR., County Attorney of Johnson County, *Appellee*, v. THE HARTFORD ACCIDENT & INDEMNITY COMPANY OF HARTFORD, CONN., *Appellant*.

(114 P. 2d 812)

Opinion filed July 5, 1941.

*Howard E. Payne* and *John W. Breyfogle, Jr.*, both of Olathe, for the appellant.

*Frank D. Hedrick, Jr.*, county attorney, and *Thomas E. Joyce*, of Kansas City, for the appellee.

The opinion of the court was delivered by

Hoch, J.: This is an appeal from an order declaring forfeited a performance bond given by the custodian of a dependent and neglected child to secure delivery of the child upon order of the juvenile court.

Appellant contends that the district court had no jurisdiction of the subject matter; that the conditions of the bond had not been broken; that the bond was invalid and that appellant was not estopped to deny its validity.

On July 6, 1940, the county attorney of Johnson county filed a petition in the juvenile court, as a citizen of the county, alleging that the child was neglected and dependent, kept in an unfit place, etc., in violation of the statute. On August 14, 1940, hearing was held in the juvenile court, both parents together with their attorneys being present, and the state being represented by the county attorney. Evidence was submitted, the allegations of the petition found true and a finding made that the child was without proper parental care and that a married sister of the minor child, whose home was in Ballinger, Texas, was a proper person to have the care and custody of the child. The court further found that being a nonresident of the state, a bond should be given by the married sister conditioned upon delivery of the child to the juvenile court upon court order. The order, entered on August 14, 1940, was that the probation officer deliver the child to the sister upon written acceptance of care, custody and control, and upon filing a bond in the sum of $3,000 conditioned upon delivery of the child "to the juvenile court whenever ordered to do so." The sister accepted custody and furnished a bond written by the Hartford Accident and Indemnity Company, the appellant here. The bond recited that the sister "has accepted said custody, care and control of said minor child, subject to the further order of the court," and the condition of the bond was that the sister "shall deliver the said Jeamsiean Edith Price to the juvenile court of Johnson county, Kansas, whenever so ordered within a reasonable time upon notice being given according to law." By its terms the bond was to be in effect until January 1, 1941.

On August 15, 1940, the mother appealed from the order to the district court.

On October 14, 1940, the judge of the juvenile court entered an order—which was designated a *"nunc pro tunc"* order—reciting that

it was the intention, when the order of August 14 was made, to place the child in the sister's custody for the period covered by the bond, and ordering her to deliver the child to the juvenile court on or before December 30, 1940, "to abide the further order of the court." As hereinbefore noted, notice of appeal to the district court had been filed about sixty days before this so-called *nunc pro tunc* order—to which reference will later be made—was entered.

On October 18, 1940, the mother filed a motion in the district court alleging that the father had secured custody of the child, that he was not a fit and proper person to have such care and control, and asking that the order of August 14, 1940, be modified to require the immediate delivery of the child to the court pending final disposition of the appeal. Hearing was held on this motion on October 25, 1940, the mother, her attorneys, and the county attorney being present. The father, whose attorneys had been notified, was not present or represented. The motion was granted and the order of August 14 modified to require delivery of the child to the court on or before 1:30 p. m. on November 4, 1940. Return was made by the sheriff of the Texas county where the sister resided, showing personal service on her on the morning of October 28, 1940.

Hearing was held by the district court on the afternoon of November 4, the mother, her attorneys and the county attorney being present. Neither the father nor the sister appeared in person or by counsel. After hearing the evidence the court found that the sister had delivered the child, or permitted it to be delivered, to the father; that both the father and the sister were in indirect contempt of court and that the conditions of the performance bond had been broken. Provisions of the order then entered, which are not material here, need not be recited. The bond was declared forfeited and collection directed. Upon motion of the surety company, the case was reopened and again heard on December 9, 1940, on the question of forfeiture, all parties except the sister and father being present or represented. The bond was again declared forfeited and a finding made that the surety company was estopped to deny validity of the bond. The surety company alone appealed from the order of the district court.

We first consider the so-called *"nunc pro tunc"* order of October 14, 1940. The order was in fact a modification of the former judgment. The prior judgment of August 14 was that the sister was to have the care, custody and control of the child "subject to the further order of the court" upon the furnishing of a bond to secure delivery

of the child "whenever ordered to do so." It is true that the bond furnished by the surety company provided for expiration December 30, 1940, but the order itself fixed no time limit on the sister's custody. The recital in the *"nunc pro tunc"* order of October 14 that it was the court's "intention" when the order was issued on August 14 to grant custody at that time only until January 1, 1941, does not alter the fact that such an order was not in fact issued. The function of a *nunc pro tunc* order is to recite the action theretofore actually taken but not properly or adequately recorded. (3 Bancroft's Code Practice and Remedies, p. 2259, § 1734; 28 Words & Phrases, pp. 983-985; *Victory Life Ins. Co. v. Freeman,* 145 Kan. 296, 65 P. 2d 559; *Tincknell v. Tincknell,* 141 Kan. 873, 876-877, 44 P. 2d 212.) It cannot be effective to alter, as of the prior date, the action then taken or the order actually made. However, even if the order of October 14 were to be regarded as a valid *nunc pro tunc* order, the outcome would not, for reasons presently to be stated, be changed.

Appellant first contends that the order of August 14, 1940, was not an appealable order, and that, therefore, the district court was without jurisdiction. Appellant cites, as the only provision of the juvenile court law (G. S. 1935, 38-401 to 38-432) specifically providing for appeals, section 38-412, which provides that an appeal to the district court shall be allowed "from the final order of commitment made by the juvenile court." It is first argued that there had been no "commitment" within the meaning of that section for the reason that the provision refers back to section 38-409, relating solely to "delinquent" children, and that this child was not "delinquent," but was "dependent and neglected." We find no basis for holding that the word "commitment" in section 38-412 refers solely to section 38-409. It refers equally to the "commitment" of "dependent and neglected" children, which is clearly provided for in sections 38-406 and 38-407. Appellant next argues that the "order of commitment" in this case was not "final," and, therefore, not appealable. The contention is that since the juvenile court had given the sister custody of the child "subject to the further order of the court" the order of August 14 was not a final order of commitment. We cannot agree with that contention. The use of the word "final" in the statute does not contemplate the last order of commitment that could or might be made. Even if the order of August 14 had not contained the provision "subject to the further order of the court" the

court would still have had authority at any later date, and upon proper showing, to set aside the order of commitment and to change the custody of the child. The statute (G. S. 1935, 38-410) specifically grants such authority—all in the interest of the child's welfare, which is ever paramount. Certainly, therefore, the fact that custody might later be changed by a subsequent order would not make the former order of commitment nonappealable. In this case, even though the order of August 14 were construed to provide for further consideration of the matter on December 30, the fact would remain that there was formal commitment for a period of four and a half months—a period of such length as to be vitally important to the welfare of a small child. Suppose the order had recited that custody and control were granted for a period of one year, or two years, at the expiration of which time the child was to be again brought before the court for further determination of custody. Certainly it could not be said that such an order would not be "final" within the meaning of the appeal section of the statute. In this case there was not a mere temporary delivery of the child to the care of someone pending investigation and decision. After full hearing there was a formal finding that the child was neglected and dependent; that the sister was a "fit and proper person to have the care, custody and control of said minor child"—such findings certainly having the nature of finality—and the order recited that the finding concerning the sister was "based upon an investigation made by the Kansas State Board of Social Welfare and Texas Welfare Agencies," and the investigation reports were made a part of the record. Clearly on the instant facts, the order of commitment was appealable.

Appellant's next contention is that at the time the district court declared forfeiture of the bond the conditions of the bond had not been broken. The argument is that the bond was given to insure the delivery of the child to the juvenile court, and that no order of that court had been broken. However, the condition of the bond was that the child would be delivered "whenever ordered to do so." Section 38-412, dealing with appeals, provides that "the judge of the district court may, pending a hearing on appeal, *make such modification of the order of the juvenile court,* and upon such conditions, as to him may seem proper." (Italics ours.) The section further provides that "upon the final hearing on appeal, the case shall be heard and disposed of in the spirit of this act *and in the exercise of all the powers and discretion herein given to the juvenile court."* (Italics

ours.)  The district court is thus in effect constituted a juvenile court in cases within its jurisdiction upon appeal.  Appellant must be presumed to have known these provisions of the juvenile court law when it furnished the bond.  Under clear statutory authority, and after full hearing, the district court did, for good cause shown, modify the order and gave reasonable and ample time for delivery of the child.  No burden was thereby imposed upon appellant which it had not freely assumed in the bond.  The condition of the bond had been broken, and forfeiture was lawfully and properly declared.

Appellant's last contention is that the bond was void for the reason that there is no statutory provision for such a bond; that it was without consideration; and that it was against public policy.  It is true that there is no specific provision of the juvenile court law for a performance bond in such cases.  Section 38-406 does provide, however, that the child may be committed to "the custody of some suitable person, subject to the supervision and control of the probation officer, *and to such other conditions as may be imposed by the court.*"  (Italics ours.) · However, even if this provision be considered inapplicable, or insufficient authority for the bond, it would by no means follow that the bond was void.  While bonds not provided for by statute and extorted by public officers, under color of their office, are not enforceable, the general rule is that the mere absence of specific statutory authority for the giving of a bond does not invalidate a bond which is given voluntarily, and which is not in contravention of public policy.  It is valid as a common law obligation, or as a contractual obligation voluntarily undertaken.  (9 C. J., p. 29, § 45, 11 C. J. S., Bonds, § 27, and cases there cited; 8 Am. Jur., p. 721, § 35; *Constable v. National Steamship Co.,* 154 U. S. 51, 38 L. Ed. 903, 916, 14 S. Ct. 1062.)  Appellant cites the annotation in 34 A. L. R. 612-624, in support of the proposition that bonds given without specific statutory authority are void.  Those cases deal mostly with bail bonds required by officers in criminal cases where the statute has not provided therefor.  Such cases, relating to bonds given by defendants, involve compulsion, and are neither controlling nor persuasive in this case.  The same must be said concerning the Wisconsin case of *Milwaukee County v. Van Den Berg,* 215 Wis. 519, 255 N. W. 65, 94 A. L. R. 352, stressed by appellant.  That case quoted with approval from *Merton v. Hausen,* 200 Wis. 576, 229 N. W. 53, wherein a "town board" refused to issue a permit to sell nonintoxicating beverages until the applicant furnished a bond,

whereas the statute expressly provided that an applicant was entitled to such a permit upon a showing that he was a "proper person." The applicant had met the full requirements of the statute, and the officers had no power to impose an additional one. But in this case the sister was not entitled to custody of the child as a matter of right, under the statute or otherwise, merely because she was a fit person to have such custody. She accepted custody upon the condition provided. And certainly the surety company, the appellant, cannot say that it acted under compulsion. It did not have to furnish the bond. Nor do we find anything contrary to public policy in requiring the bond before placing custody with the sister, who was not a resident of this state. Equally untenable is the argument that the bond was furnished "without consideration." Obviously the argument is not good as far as the appellant is concerned. It may be assumed that it collected its regular fee for underwriting the obligation of the bond. (*Ortmeyer Lumber Co. v. Central Surety & Ins. Corp.*, 151 Kan. 226, 231, 98 P. 2d 97.)

We find no error. The judgment is affirmed.