Ex parte PARKER.

No. 31208.    Feb. 20, 1945.

Rehearing Denied March 13, 1945.

*156 P. 2d 584.*

Jerome Sullivan, of Duncan, for plaintiffs in error.

Brown & Cund, of Duncan, for defendant in error.

ARNOLD, J.    This proceeding in *habeas corpus* was commenced on the 23rd day of May, 1942, by the petitioner, Oretta Hamblin, filing in the district court of Stephens county her petition for a writ of habeas corpus to bring the body of Sherry Jo-Ann Parker before said court; in the petition it was alleged in substance that the petitioner is the mother of said Sherry Jo-Ann Parker, a female minor of the age of three years, and that the respondents, Cad Cox and Alice Cox, are illegally restraining said minor child of petitioner and have refused to permit petitioner to have the care, custody and control of said minor child without author-

ity of law; that according to the best information and belief of petitioner the illegal restraint of said child by the respondents is based upon a purported decree of adoption entered in the county court of Stephens county, Okla., on the 10th day of September, 1941, but that the purported decree of adoption is void as to this petitioner for the reason that she had no notice of said proceedings and was not informed thereof until after the decree had been entered; that the respondents, Cad Cox and Alice Cox, at the time the adoption proceeding was instituted in said county court, well knew the whereabouts of this petitioner, but falsely represented to the county court that this petitioner's whereabouts were unknown; and prayed for a hearing to determine her rights to the control and custody of her minor child; upon the filing of the petition a writ of habeas corpus issued as prayed for therein commanding the respondents to produce said minor child in court.

Respondents, Cad Cox and Alice Cox, made return to the writ of habeas corpus; in their return they denied that they were illegally restraining said minor child, Sherry Jo-Ann Parker, and alleged that their custody of the child was in all respects legal by virtue of certain adoption proceedings had in the county court of Stephens county, Okla., in cause No. 2099 in said court, and attached to their return a certified copy of the decree entered in the adoption proceedings; it was further alleged that petitioner is not a fit and proper person to have the care, custody, and control of said minor child, and that the child had been in the care, custody, and control of respondents since a few weeks after her birth, which occurred in the home of respondents, and that respondents have become attached to said child and love her as if she were of their own blood, and that they are fit and proper parties to have the care, custody, and control of her.

Upon the issues thus raised trial was had, resulting in findings and judgment by the trial court in favor of petitioner and against respondents and ordering the immediate surrender of said child by respondents to the petitioner.

Motion for new trial was overruled, provoking this appeal by respondents.

In their petition in error filed in this court, respondents have made five assignments of error. The first assignment of error is that the trial court erred in overruling the motion of respondents for a new trial. The second, third, fourth, and fifth assignments of error were made grounds of the motion for new trial in the court below, and it is, therefore, apparent that the first assignment of error embraces and comprehends the other four so that it will only be necessary in the consideration of this case to pass on the first assignment of error.

The trial court made a finding that at the time of the adoption proceedings in the county court on the 10th day of September, 1941, the petitioner was residing at Fort Sill, Okla., and could have been notified of said proceedings, but that no notice was given to her, and that by reason thereof the adoption proceedings relied on by respondents are void and of no effect as to the petitioner, Oretta Hamblin, mother of the child. There is evidence, though conflicting, of facts and circumstances which amply sustain this finding of the trial court.

The petitioner was married to Sergeant O. B. Hamblin May 16, 1941, and the adoption proceeding was instituted thereafter on September 10, 1941. Preliminary to the adoption proceeding respondents procured one Ann Finley, a neighbor and friend of theirs, to file a proceeding in the county court of Stephens county, sitting as a juvenile court, against the minor, Sherry Jo-Ann Parker, as a dependent and neglected minor child, and the court awarded the custody of said child to said Ann Finley in such proceeding. These preliminary proceedings were had on the 10th day of September, 1941, and on the same day the petition for adoption was filed in said county court by respondents, the said Ann Finley gave her consent

to the adoption, and the decree of adoption was entered on the same day. On cross-examination Alice Cox testified as to how she and her husband came to have the child in their possession, that the petitioner was going to Tulsa and give the child away, and that she took the child rather than have it given away to anyone. In reference to whether the child was dependent and neglected at the time of the adoption proceeding, the same witness testified that she and her husband were taking good care of the child, and that they had learned to love it as if it were of their own blood.

The definition of a dependent and neglected child is found in 10 O.S. 1941 § 101, the material language of which section reads as follows:

". . . For the purpose of this article the words 'dependent child' and 'neglected child' shall mean any male child under the age of sixteen years and any female child under the age of eighteen years who for any reason is destitute, homeless or abandoned; or dependent upon the public for support; or has not the proper parental care or guardianship; . . ."

It was on this language of section 101, Id., that the order of the juvenile court was based placing the child in the custody of Ann Finley, and it is upon the language of 10 O.S. 1941 § 110, that respondents relied to excuse the failure to give notice of the adoption proceeding to the petitioner herein. Said section 110 is as follows:

"In any case, where the court shall award a child to the care of any association or individual in accordance with the provisions of this Article, the child shall, unless otherwise ordered, become a ward, and be subject to the guardianship of the association or individual to whose care it is committed. Such association or individual shall have authority to place such child in family home with or without indenture, and may be made party to any proceeding for the legal adoption of a child and may by its, or his attorney or agent, appear in any court where such proceedings are pending and assent to such adoption. And such assent shall be sufficient to authorize the court to enter the proper order or decrees of adoption. Such guardianship shall not include the guardianship of the estate of the child."

10 O.S. 1941 § 44 relates to the adoption of children, and so far as its language is material to be considered here reads:

"A legitimate child cannot be adopted without the consent of its parents, if living, nor an illegitimate child without the consent of its mother, if living, . . ."

This section has been the law of this jurisdiction since territorial days, and soon after statehood this court considered and applied this language. In the case of Allison v. Bryan, 26 Okla. 520, 109 P. 934, as in the case at bar, the minor child whose adoption was in question was an illegitimate. The father of that illegitimate child took the child into his home with the consent of his wife, thus legitimating it under the laws of this state. After so legitimating the child he and his wife began adoption proceedings in the county court of Cleveland county, and the father purported to give his consent to the adoption of said child by himself and his wife. No notice of such proceedings was given to the mother of said child. It would seem that those facts would be much stronger to excuse the failure to notify the mother of the child than do the facts in the case at bar, yet this court denied the force and effect of such facts to excuse the giving of such notice and held the adoption proceedings therein to be void as to the mother of said child. Paragraph 5 of the syllabus to that case reads:

"Under section 4900, Comp. Laws Okla. 1909, the mother of an illegitimate, unmarried minor child is entitled to its custody, service, and earnings, and under section 4919, Id., such child cannot be adopted without her consent, if she be living and has not forfeited her rights therein, and an adoption sought to be made without her consent is not valid as to her, notwithstanding the consent of the father of the child who, acting under section 4931, Id., had previously received the child into his home and in a lawful manner effected its legitimation."

In the body of said opinion, at page 529, the court elaborated on its reasons for so holding in the following language:

". . . It is true that acting under the statute the father has completely legitimated the child; it now enjoys all of the rights and privileges of a legitimate child as mentioned in the case of Pratt et al. v. Pratt et al., supra, and 'the father of a legitimate unmarried minor child is entitled' to its custody, services, and earnings' (section 4899, Comp. Laws Okla. 1909), and the reciprocal rights and duties between the father and the child are the same as those existing between legitimate parents and their legitimate children; still, as to its mother, when her rights are involved, it is an illegitimate child, and the law is that an illegitimate minor child cannot be adopted without the mother's consent, and that which cannot be done directly cannot be done indirectly. Except for the legitimating statute, no one could have disturbed this woman's complete right of custody in and to her child, and in our judgment it would be a strained and unnatural construction of this statute and the rights of the parties under it to yield to the contention of counsel for defendant, for 'the law should never receive such a construction as would tend to dry up the sources of natural affection.' Barela v. Roberts, 34 Tex. 554. If the mother desires to give her consent to adoption, she of course may do so, but she cannot be lawfully stripped of her inherent right to say no."

This construction and application by this court of the quoted language of section 44, supra, has been followed in many cases since, where the custody and control of legitimate children are involved. Its correctness has never been questioned and it is certainly controlling both in reason and as authority in the case at bar. We think the trial court was correct in holding the adoption proceeding had in the county court of Stephens county, Okla., on the 10th day of September, 1941, was void and of no effect as to the petitioner, Oretta Hamblin.

With reference to the order of the trial court requiring the respondents to immediately surrender the control and custody of this child to petitioner, other facts and circumstances are to be weighed and other rules of law considered.

Habeas corpus proceedings to determine the right to the control and custody of a child of tender years are highly equitable in their nature, calling for the exercise of a carefully guarded judicial discretion.

The record in this case discloses that when the mother of this child left the home of respondents, leaving her child in their care, she was without means of any kind to take care of herself and the child and was leaving for the purpose of seeking employment. The record further discloses that the only character of remunerative employment for which she is qualified is domestic service. It is true that she has since married, but her husband is in the armed service of the United States and it is extremely unlikely that they will establish a permanent place of abode during the duration of the present war. It is reasonable to presume that under such circumstances she would necessarily have to entrust the care and control of this child to others in order to pursue her employment.

On the other hand, it was agreed between the parties upon the trial of this case that the respondents are fit and proper persons, socially, morally, and financially, to take care of, control, and educate this child. It is further disclosed that for more than three years prior to the trial of this case in the lower court she had been a member of respondents' family and knew no other mother than the respondent Alice Cox. It is further disclosed by the record that respondents are greatly attached to this child and are anxious to continue in her custody and control.

30 O.S. 1941 § 11, so far as material to be considered here, reads as follows:

"In awarding the custody of a minor, or in appointing a general guardian, the court or judge is to be guided by the following considerations:

"1. By what appears to be for the best interests of the child in respect to its temporal and its mental and moral welfare; . . ."

This language is clear and explicit in vesting extraordinary judicial power in a court charged with the determination of the custody of a child such as the one here involved. The provisions of this section have been frequently considered by this court in similar proceedings and this court has uniformly held that this section vests it with the power and authority to weigh the evidence and to determine what is for the best interest of the minor involved in the circumstances presented to this court. In the case of Ex parte Sloan, 147 Okla. 164, 296 P. 398, the first paragraph of the syllabus reads:

"On appeal to this court from an order made in a habeas corpus proceeding denying relief to the petitioner, where the issue involved the custody of a minor child, this court will make such order for the custody of the child as the record in the case shows will be for the best interest of the child."

In the body of the opinion at page 165 the following language is used:

"Under the state of the record there is but one question before this court, and that is, What will best subserve the interest of the child? Bishop et al. v. Benear, 132 Okla. 116, 270 P. 569. This court in this sort of proceeding has the jurisdiction to determine that question. Brooks v. Preston, 134 Okla. 273, 273 P. 345, and cases therein cited."

In this case, the child whose custody is under consideration was born at the home of Mr. and Mrs. Cox, the mother went some distance away, and at very infrequent times made inquiry or contact with those in whose care and custody she had left it, without compensation for its care. While she had addressed a card or two to them, she had given no permanent address at which she could be reached, and she was situated in a fast growing city with a great influx of persons, both civilian and military. Under these circumstances the paramount issue is, what will be for

the best interest of the minor child, considering the situation and actions of the mother, as well as those who have kindly stepped into the position of parents and given it the protection and care required by it in its helplessness?

This court adopted and has since statehood uniformly adhered to the rule that in equitable actions it will weigh the evidence, and if it finds that the judgment of the trial court is clearly against the weight of the evidence, it will render or cause to be rendered such judgment as the trial court should have rendered. Pevehouse v. Adams, 52 Okla. 495, 153 P. 65; Marshall v. Grayson, 64 Okla. 45, 166 P. 86; Martin v. Bruner, 64 Okla. 82, 166 P. 397; Hart v. Frost, 73 Okla. 148, 175 P. 257; Lee v. Little, 81 Okla. 168, 197 P. 449.

It is considered by us, in view of all the circumstances disclosed by the record, that the trial court erred in entering its order requiring the respondents to immediately surrender the control and custody of Sherry Jo-Ann Parker to the petitioner. Her custody is awarded to respondents.

The judgment of the trial court is affirmed insofar as it holds the purported adoption proceeding in the county court of Stephens county, Okla., on the 10th day of September, 1941, to be void and of no effect as to the petitioner; the order of the trial court for the immediate transfer of the control and custody of Sherry Jo-Ann Parker to the petitioner is reversed and this cause remanded, with directions to the trial court to enter such other and further orders as may be necessary to conform to the views herein expressed.

GIBSON, C.J., HURST, V.C.J., and OSBORN and CORN, JJ., concur. RILEY, BAYLESS, WELCH, and DAVISON, JJ., dissent.

WELCH, J. (dissenting). The majority opinion, without just cause as I see it, violates the mother-right to custody of her infant child. And in awarding the child to other persons the decision appears to be against the young

mother on three specific grounds: (1) That she is not skilled in any craft or trained for any profession or employment except keeping house; (2) that the husband is away from home in the army of his country; and (3) that the mother is not financially independent, therefore the court assumes she must labor for subsistence, and while working leave her baby with others to care for.

Then the decision appears to turn on the point of comparative abilities to care for the child, in direct conflict with former decisions which hold expressly that such point may not be controlling against a parent.

The majority opinion entirely overlooks the point, or finds it of no importance, that the trial court found this mother to be a fit person to have custody of her child. The mere awarding of the child to the mother would have implied that finding of fact, but here the respondents, Mr. and Mrs. Cox, affirmatively alleged the petitioner, the mother, was not a fit person to have such custody. Thus a specific issue was made on that point and determined in favor of the child's mother, Mrs. Hamblin.

Then this mother is entitled to custody of her child as the trial court ruled. We should affirm unless we take judicial notice that it is true in fact that the wife of a first sergeant in the army is so destitute as to be wholly unable to maintain herself and child, because at present she is only skilled as a housekeeper. For any court to assume such to be true would be a harsh indictment of our war-time government. I prefer to take notice of the law under which substantial allotments would be made by the husband and by the government. I also prefer to recognize, as everyone knows, that in many cases the wives of sergeants, and even of privates, are able, with the government allotments, to carry on at home and maintain themselves and one or more children, while the husband is absent fighting the war.

The majority opinion unduly emphasizes the fitness and financial ability of

Mr. and Mrs. Cox to care for this child. Their fitness or ability simply was not questioned. Therefore, the record does not show whether they have income above or below the $148 per month income of Mr. Hamblin, or whether they have a fortune and are not dependent on an income. The most that can be assumed is that the financial resources of Mr. and Mrs. Cox are greater than those of Mr. and Mrs. Hamblin, how much greater we do not know because the record is silent on it. Add to that presumption the fact that Mr. Cox is home, while Mr. Hamblin is away from home serving as a first sergeant in his country's army, and you have the difference which by the majority opinion is of such controlling importance as to outweigh everything else, and to require that the custody of the child be given to Mr. and Mrs. Cox rather than to its mother, Mrs. Hamblin, and all that contrary to the findings of the trial court judge, who saw the witnesses and parties and heard them all testify.

This is the first case in which this court has been called upon to test the ability of a mother to support herself and child while her husband is away in the army. Although she testifies she can make it, and although the trial court was satisfied she could succeed, the majority rules otherwise and will not give her a chance to try it; as if to say at once that her testimony is only an example of untrustworthy enthusiasm of youth, and the trial court's conclusion only a simple example of misplaced confidence. When the trial court judgment so plainly marks the course we should follow, it is unfortunate that we should reverse in this first, and therefore precedent-making, case on this question.

This woman is as much entitled to the custody of her child as if it were born after marriage. The law provides, 10 O.S. 1941 § 5, that as to a legitimate child "The father . . . or mother" is entitled to custody. The next section, quoted in full, is as follows:

"The mother of an illegitimate un-

married minor is entitled to its custody, services and earnings."

The last-quoted rule fixed by statute is confirmed by our decision following it in Allison v. Bryan, 26 Okla. 520, 109 P. 934. And it is the rule elsewhere, of course. See annotation 51 A.L.R. 1507, citing decisions of various states.

It goes without saying that her misfortune does not prevent this mother from applying to the courts to protect her rights, nor lessen the force of her plea for those rights which are specifically her rights even in the case of such a misfortune.

We have no more right in law to deprive this mother of her child than we have to deprive a mother of her legitimate child under similar circumstances. Many legitimate children are being cared for by the mother while her husband is at war, and certainly when we are considering only the ability to properly care for the child, as here, the legal mother-right being the same, we should apply a similar test. The fact is, and it is the law, that in either instance we should award custody to the mother unless she be an unfit person to have such custody. While if she be an unfit person to have that custody, then it should be denied her, whether the child be legitimate or illegitimate.

There is here shown no unfitness of the mother nor any necessity so far as the child is concerned, merely that Mr. and Mrs. Cox are better able, by comparison, to support the child.

Another point which concerns me is that the majority opinion is contrary to our former decisions. The opinion correctly holds that the purported adoption by Mr. and Mrs. Cox was void and a nullity, and in that respect or on that point the opinion cites and follows the decisions. But on the other point, that is, taking custody away from the mother, the majority opinion is against many decisions of our court, a few of which I now cite.

In Jamison v. Gilbert, 38 Okla. 751, 135 P. 342, this court followed the law and awarded the child to its father as against its maternal grandparents, and the law there declared and followed is properly applicable here, for it was held in paragraphs 2 and 3 of the syllabus as follows:

"The unfitness which will deprive a parent of the right to the custody of his minor child must be positive and not comparative; and the mere fact that his minor child might be better cared for by a third person is not sufficient to deprive the parent of his right to its custody.

"It is not sufficient, to establish the unfitness of a parent for the custody and control of his minor child, to show that he has some faults of character or bad habits: it must be shown that his condition in life or his character and habits are such that provision for the child's ordinary comfort and contentment, or for its intellectual and moral development, cannot be reasonably expected at the parent's hands."

In the case of In re Butler (Popham v. Cross), 41 Okla. 629, 137 P. 673, this court followed the law and awarded custody to the mother and announced this controlling rule in paragraph 1 of the syllabus:

"The legal right of the mother of a minor child, its father being dead, to its custody and control, is superior to that of a third person, whose claim is based upon the fact that he has cared for and supported the child for some two or three years."

In Lynch v. Poe, 53 Okla. 595, 157 P. 907, child custody was awarded the father as against the maternal grandparents who had cared for the child three years. The court held in the syllabus as follows:

"In a contest between the father and grandparents, in order to deprive the father of the custody of his child, it must be shown that his condition in life, or his character and habits, are such that provision for the child's ordinary comfort and contentment, or for its intellectual and moral development cannot be reasonably expected at the parent's hands."

In all three of these cases the children had for a period of years been cared for by others who contested to continue that custody as in the case at bar.

In Hedtke v. Kukuk, 93 Okla. 264, 220 P. 615, the court followed the law, awarding custody to the father as against the maternal aunt and uncle, holding in paragraph 3 of the syllabus as follows:

"In a habeas corpus proceeding brought by the surviving parent to recover custody of a minor child, the burden of proof is upon the respondents to show they hold the child under an order of a court of competent jurisdiction, or that the petitioning parent is an unfit and improper person to have such care and custody."

In Brooks v. Preston, 134 Okla. 272, 273 P. 345, custody was awarded to the father as against maternal grandparents who had cared for the child from the time it was about ten months old, the court holding in paragraph 1 of the syllabus as follows:

"In a contest between the father and the grandparents, in order to deprive the father of the custody of his child, it must be shown that his condition in life, or his character and habits, are such that provision for the child's ordinary comfort and contentment or for its intellectual and moral development cannot be reasonably expected at the parent's hands."

In Sherrick v. Butler, 175 Okla. 538, 53 P. 2d 1097, custody was awarded to the mother as against paternal uncle and aunt who had cared for the child for five years, from the age of two to the age of seven, although in that case the mother, being forced by necessity to go out and work, had undertaken to agree specifically to let the child's uncle and aunt keep and rear the child. It was held there, as in the other cases, that the mother must prevail unless shown to be an unfit person, but that the unfitness must be of positive nature and character and not merely comparative with the abilities of others to care for the child.

In Scroggins v. Griffin, 185 Okla. 456, 94 P. 2d 244, custody was given to the father against the maternal grandparents, although they had cared for the child over a period of years, and the court properly held in the third paragraph of the syllabus as follows:

"The unfitness which will deprive a parent of the right to the custody of his minor child must be positive and not comparative; and the mere fact that the child might be better cared for by a third person is not sufficient to deprive the parent of his right to its custody."

I think the rule of those cases is the universal rule. I think the decision here should follow that rule. Since the majority opinion departs therefrom, it should so state, and perhaps given reason therefor, lest it serve to multiply confusion in the minds of litigants, lawyers, and trial judges, as to which decisions still stand, and as to which rules still survive.

The lack of any authority to support the majority opinion is strikingly demonstrated by the character of decisions cited in the opinion for apparent support. The majority opinion cites six decisions, only one of which has anything to do with child custody, and that is the first case cited, Ex parte Sloan, 147 Okla. 164, 296 P. 398. That was a contest between the mother and others for child custody, but after the case was lodged here on appeal the parties stipulated in detail for the custody of the child, and our opinion approved that stipulation which was entered into by the parties and specifically based upon a change in conditions since the former trial.

The opinion cites four cases, Pevehouse v. Adams, 52 Okla. 495, 153 P. 65; Marshall v. Grayson, 64 Okla. 45, 166 P. 86; Martin v. Bruner, 64 Okla. 82, 166 P. 397, and Lee v. Little, 81 Okla. 168, 197 P. 449. Each of the four is a suit to cancel deeds for fraud and they announce the general rule for testing the sufficiency of evidence in a case of equitable cognizance, but they have nothing further to do with any of the points involved in this case.

232

The remaining one of the six decisions cited is Hart v. Frost, 73 Okla. 148, 175 P. 257, which was a suit to correct a deed to make it conform to the terms of contract of purchase. It likewise announces the rule for weighing evidence in an action of equitable cognizance, but that is all.

I respectfully, but insistently, urge that this opinion should follow the trial court's conclusions of fact which are not found in the majority opinion to be contrary to the weight of the evidence, and that the opinion should follow the law so often announced in our former decisions.

In the body of the opinion, immediately following the two quotations from Ex parte Sloan, there are inserted some statements of fact and of conclusions which are contradictory of other parts of the opinion, and are confusing as to the real conclusion of the court. It is there stated that this mother did not compensate Mr. and Mrs. Cox for caring for this baby, as if that were important. She did not, it is true, but they did not expect pay. They did not start caring for this baby for pay and never requested compensation, and so far as this record shows never wanted pay. Nor did the mother go very far away, only about 30 miles into an adjoining county. It is there stated as a fact, though the basis of the statement is not shown, that the mother had given no permanent address at which she could be reached. To the contrary, the record discloses at pages 20 and 21 the number of times the mother visited Mrs. Cox; that she fully advised Mr. and Mrs. Cox as to her location and address and received mail from them at such address and wrote Mrs. Cox several letters. At this point the opinion notes that "the paramount issue is, what will be for the best interest of the minor child?" Likewise the trial court stated the finding in the journal entry that the best interest of the child was "one of the paramount issues in this case." But that court found all issues in favor of the mother. Now, without saying that finding is against the clear weight of the

evidence, in any particular, the majority assumes the other view, and wrongfully so in my opinion.

For these reasons I dissent.