In the Matter of Albert TINDELL and Sue Tindell, Dependent Minor Children.

No. 36694.

Supreme Court of Oklahoma.

Nov. 1, 1955.

Rehearing Denied Jan. 31, 1956.

Mac Q. Williamson, Atty. Gen., Owen J. Watts, Asst. Atty. Gen., Sandy Singleton, Attorney for Department of Public Welfare, Oklahoma City, for plaintiff in error.

A. H. Huggins, Norman, Bob Perdue, Wilburton, for defendant in error.

Gus Rinehart, Gomer Smith, Jr., Tom S. Williams, Claude Love, Oklahoma City, John Wallace, Miami, Okl., James B. Miller, Shawnee, amici curiæ.

HALLEY, Justice.

Mandy Tindell, mother of the minor children involved, will be referred to as Petitioner, and the Child Welfare Division of the Department of Public Welfare of the State of Oklahoma will be referred to as Appellant.

Prior to 1953, the husband of Mandy Tindell and the father of these children had been unable to work and Mandy Tindell had been confined in the State Hospital at Talihina with tuberculosis. Mr. Tindell had been receiving old age assistance payments and the State Department of Public Welfare had been assisting in the support of the minor children. Mandy Tindell was released from the hospital in February, 1953, as an arrested case with orders to return for further examination.

In March, 1953, Mr. and Mrs. Tindell had domestic trouble resulting in serious threats by Mr. Tindell to take the lives of his wife and the two children. Mrs. Tindell instituted divorce proceedings after taking the children to the home of a neighbor for their protection. She consulted the county attorney of Latimer County and informed him of existing conditions and her inability to care for the children.

As a result of this conference, the county attorney filed a petition in the Juvenile Court of Latimer County, being case No. 570, styled "In the Matter of Albert Tindell and Sue Tindell, Dependent Minors." A hearing was set for April 4, 1953, at which both parents appeared and also a representative of the Department of Public Welfare. The parents waived a jury and after evidence was introduced, the court made an order finding the minors "dependents and should be made wards of the court." Since the validity or invalidity of the decree entered April 4, 1953, constitutes the principal issues in this appeal, it is quoted verbatim:

"It is therefore ordered, adjudged and decreed by the Court that the natural parents of the said James Albert and Frances Sue Tindell and all other persons are hereby judicially deprived of the care, custody control, nurture and education of said children and that they are further judicially deprived of any right, title or interest in, to and over said children.

"It is further ordered by this court that said children be given to the Division of Child Welfare of the Department of Public Welfare of the State of Oklahoma for the purpose of finding a suitable home, with or without indenture, or for adoption, and that they be given the further right by their legal representative to sign written consent for adoption for said children into a

suitable home, and that the natural parents and all other persons are hereby and forever restrained and enjoined from interferring in any manner with the Division of Child Welfare, in its care, custody, control, nurture and education of said children, and that it is the best interest of said children, and all parties concerned that said children be placed with the Division of Child Welfare of the Department of Public Welfare of the State of Oklahoma, for the purpose of finding a suitable home for adoption, with or without indenture, or for adoption. If these children are not found suitable for adoption, said children may be placed in an institution willing to receive said children.

"It is further ordered by this court that the Division of Child Welfare of the Department of Public Welfare of the State of Oklahoma, is hereby authorized to take permanent custody of the said James Albert Tindell and Frances Sue Tindell, by and through one of its representatives for placement of said children for adoption and giving their written consent thereto, or if said children are not suitable for adoption, it may place them in an institution willing to receive said children."

"J. W. Callahan

J. W. Callahan, County Judge."

Under the foregoing decree the minors were turned over to the Department of Public Welfare and have since been under its care and custody.

June 22, 1954, Mandy Tindell filed in case No. 570 in the Juvenile Court of Latimer County an application to vacate the above quoted order of April 4, 1953. This application was based upon alleged changed conditions of the Petitioner, in that she had recovered from her illness, had divorced her husband, had a home of her own and was now alleged to be able to care for and train her children. She further alleged that it had never been her intention to give up her children permanently but that she was merely trying to protect them from the threats of their father. She prayed that the children be returned to her and alleged that the Department of Public Welfare had refused to reveal the whereabouts of her children.

The Appellant filed a response to the application to vacate and set up that the decree of April 4, 1953, had become final since no appeal had been taken. The Petitioner filed a motion to strike the response and the court sustained the motion, but permitted the Appellant to dictate an amended response into the record.

After hearing the evidence offered by Petitioner, the court vacated its order of April 4, 1953, and ordered the Child Welfare Division of the Department of Public Welfare to deliver the minor children to Petitioner, Mandy Tindell, instanter.

This order could not be complied with since Sue Tindell had been adopted into a home in Oklahoma and Albert Tindell had been placed in a suitable foster home in the State of Missouri and was ready for adoption.

Appellant filed a motion for a new trial based largely upon the same grounds as the response filed and stricken by the court. The basic contention was the alleged error of the court in holding that it had continuing jurisdiction over the minors after the order of April 4, 1953, above quoted, giving the Division of Child Welfare full authority over the minors, including the right of adoption, and expressly depriving the natural parents of any further authority over the dependent, neglected children.

October 9, 1954, while this appeal was being perfected, and without notice to Appellant, the County Court of Latimer County, sitting as a Juvenile Court, entered an order which is in part as follows:

"It is therefore ordered, adjudged and decreed by the Court that L. E. Rader, Director of the Division of Child Welfare of the Department of Public Welfare of the State of Oklahoma, be, and the said L. E. Rader as such Director is hereby ordered and directed forthwith and without delay to bring into this Court all files, records and correspondence concerning the custody of said minor children above

named, all copies of adoption proceedings had relative to either or both of said minors, the County Court in which said adoption proceedings have been filed, the present addresses of said minors and the names and residences of the person or persons who have adopted said minor children.

"It is further ordered by the Court that a certified copy of this Order be served on the said L. E. Rader by the Sheriff of Oklahoma County, Oklahoma, and that the said L. E. Rader, as such Director comply with said Order within five (5) days from date of service upon him as such Director.

"And it is so ordered.

"J. W. Callahan,
"(Seal)          County Judge."

Appellant applied for a Writ of Prohibition to enjoin the judge of the Juvenile Court from enforcing the order of October 9, 1954, and action thereon was deferred until this appeal is finally determined.

It is not disputed by Appellant that the natural parents were not notified of any action by the Division of Child Welfare in regard to the care or custody of the minors after the April 4, 1953, decree awarding the minors to the Department of Public Welfare. It is not claimed that the parents gave their consent to or acquiesced in any actions relative to the children after their custody was given to the Division of Child Welfare, Department of Public Welfare April 4, 1953, when the parents were present and apparently gave approval to the order entered. Petitioner now contends that the order was void as a matter of law in that it expressly deprived the parents of further control over the children when the Juvenile Court in fact possessed a continuing jurisdiction over them.

Appellant presents as proposition 1 the following:

"The order of the juvenile court of Latimer County, entered on the 4th day of April, 1953, was a final order, not appealed from, and the court lost jurisdiction to proceed any further in Cause No. 570, as there was not continuing jurisdiction."

Appeals from judgments of the County Court are covered by Section 274, 20 O.S. 1951, which provides:

"Appeals and proceedings in error shall be taken from the judgments of county courts direct to the Supreme Court and Criminal Court of Appeals, in all cases appealed from justices of the peace and in all cases appealed from the police judges, and in all criminal cases of which the county court is vested with jurisdiction, and in all civil cases originally brought in the county court, in the same manner and by like proceedings as appeals are taken to the Supreme Court from judgments of the district court. R.L.1910, § 1819."

In the case of In re Morrison, 176 Okl. 55, 54 P.2d 198, this Court announced in the second paragraph of the syllabus:

"A proceeding instituted under the juvenile law is civil in its nature, and from a judgment rendered in such proceeding an appeal lies to the Supreme Court. Section 15, art. 7, Constitution of Oklahoma."

After a judgment becomes final, it can only be set aside or modified by complying with sections 1031 and 1033, 12 O.S. 1951. Section 1031 enumerates the conditions, one or more of which must exist to authorize a court to set aside or modify its judgment after the expiration of the term at which rendered. None of the nine conditions there set out are shown to have existed in the case before us. This question was passed upon by this Court in W. T. Rawleigh Medical Co. v. Eggers, 74 Okl. 190, 178 P. 108, and announced in the first paragraph of the syllabus as follows:

"The county court is without jurisdiction, at a subsequent term, to take any steps toward vacating or modifying a judgment or order of the court, rendered at a preceding term, unless the provisions of sections 5267–5269, Rev.Laws 1910, relating to the vacation and modification of judgments and orders, have been substantially complied with. An order made by the court at a subsequent term, vacating a judg-

ment rendered at a former term, without complying with the conditions of, the statute in regard thereto, is void."

It is not denied that the order of April 4, 1953, was not appealed from and it is not claimed that it had not become final because the term at which it was rendered had expired. However, the court struck the response of Appellant and refused to follow Section 1034, 12 O.S.1951, which provides:

"The court may first try and decide upon the grounds to vacate or modify a judgment or order before trying or deciding upon the validity of the defense or cause of action. R.L.1910, § 5270."

Petitioner relies upon the case of In re Greenback, 207 Okl. 30, 246 P.2d 733, 736, decided by this Court in 1952. In that case a citizen filed a petition in the county court, sitting as a Juvenile Court of Ottawa County, Oklahoma, alleging that she had personal knowledge of the neglected condition of two minor children who were residents of that county, and 5 and 3 years of age. It was alleged that the children were in the custody of their mother but that they were neglected within the meaning of our statutes. Trial was had and at the conclusion thereof the court deprived the mother of the two minors' custody, and found them to be neglected children and committed them to the care of the petitioner. The order provided that they should not be removed from the city of Miami and that the party to whom they were assigned should not be the guardian of either the person or estate of such minors and that said minors should not be the wards of said petitioner within the meaning of the provisions of Title 10, Section 110, O.S.1951. At the conclusion of such order the court said:

"'* * * and that said children shall remain in the care of said Grace Dixon until the further orders of this Court.'"

Thereafter the mother of said children filed an application to vacate the above order. The Juvenile Court sustained a demurrer to the petition of the mother of the children and an appeal from such order was perfected to this Court. It was contended that the order of November 3, 1943, taking the children from the care and custody of their mother was a final order where no appeal was taken therefrom. This Court reversed the case and remanded it with directions to the Juvenile Court to overrule the demurrer and to set the matter down for further proceedings consistent with the views of the court. The Greenback case, supra, is not in point in the matter under consideration. In that case we think the Juvenile Court retained jurisdiction because its order expressly so stated, and we think this Court properly reversed the Juvenile Court. In the case before us the care and custody of the minors was expressly taken from the mother and the father and placed with a State agency with power to adopt. We think that much that is said in the opinion in the Greenback case is simply dicta and in no manner applicable to the issue now before the Court.

Under proposition 2, Appellant contends that after natural parents have been judicially deprived of the care, control and custody of their children adjudged to be dependent and neglected, and who are placed with the Child Welfare Division of the Department of Public Welfare with the provision that such agency may consent to the adoption of such children, no notice to, nor consent of the natural parents is necessary to legalize their adoption.

Section 44, 10 O.S.1951, provides:

"A legitimate child cannot be adopted without the consent of its parents, if living, nor an illegitimate child without the consent of its mother, if living, except that consent is not necessary from a father or mother deprived of civil rights or adjudged guilty of adultery, or of cruelty, and for either cause divorced or adjudged to be an habitual drunkard, or who has been judiciously deprived of the custody of the child, on account of cruelty or neglect. R.L. 1910, § 4388."

The above statute provides that a legitimate child cannot be adopted without the consent of its parents, if living, but also provides certain exceptions to that rule and among these exceptions it is provided that consent of the natural parent is not

necessary where the child " * * * has been judiciously (judicially) deprived of the custody of the child, on account of cruelty or neglect."

Attention has been called to similar statutes in all of the other states from which it appears that a vast majority of the States have statutes similar to that of Oklahoma in that notice to or consent of the natural parents to adoption is not necessary where children have been taken from the care and custody of their parents by judicial decree.

Sections 101 to 114, 10 O.S.1951, set up Juvenile Courts of the State of Oklahoma. Section 109 is as follows:

"When any male child under the age of sixteen years and any female child under the age of eighteen years, shall be found to be dependent, or neglected, within the meaning of this article, the court may make an order committing the child to the care of a suitable orphan's home or to the care of some reputable citizen of good moral character, or any State institution, department or agency authorized to provide protection or care for homeless dependent or neglected children, or to provide welfare service for such children, or to the care of some association willing to receive it, embracing in its objects the purpose of caring for or obtaining homes for neglected or dependent children, which association shall have been accredited as hereinafter provided. The court may, when health or condition of the child may require it, cause the child to be placed in a public hospital or institution for treatment or special care, or in a private hospital or institution which will receive it for like purpose without charge. R.L.1910, § 4421; Laws 1935, p. 8, § 2; Laws 1943, p. 21, § 1; Laws 1947, p. 39, § 1."

Section 110 provides:

"In any case where the court shall award a child to the care of any association or individual in accordance with the provisions of this Article, the child shall, unless otherwise ordered, become a ward, and be subject to the guardianship of the association or individual to whose care it is committed. Such association or individual shall have authority to place such child in family home with or without indenture, and may be made party to any proceeding for the legal adoption of a child and may by its, or his attorney or agent, appear in any court where such proceedings are pending and assent to such adoption. And such assent shall be sufficient to authorize the court to enter the proper order or decrees of adoption. Such guardianship shall not include the guardianship of the estate of the child. R.L.1910, § 4422."

The above quoted statutes expressly provide that where the Juvenile Court has awarded a child to the care of any association or individual, the child shall, unless otherwise ordered, become a ward and be subject to the guardianship of the association or individual, which shall have authority to place such child in a family home and may be made a party to any proceeding for legal adoption, and may, by attorney or agent, appear in any court where proceedings are pending and assent to such adoption. It will be noted that there is no provision for notice to, nor consent of the natural parents after they have been judicially deprived of the care and custody of a dependent or neglected child.

In Ex parte Parker, 195 Okl. 224, 156 P.2d 584, the facts are entirely different from those in the matter under consideration. There the parent of the child was at no time notified of the proposed adoption and never appeared or consented to any order of the court depriving her of the care and custody of her child. In the case before us the parents of the minor children instigated the proceedings and clearly made no objection to the order of the Juvenile Court on April 4, 1953, clearly depriving them of the care and custody of their children as dependent and neglected children. It should be kept in mind that the children here involved are dependent and neglected children and that provisions relating to delinquent and abandoned children are not applicable here.

It will be noted that Section 109, supra, deals with dependent and neglected children and that when the court finds a child to be dependent or neglected " * * * the court may make an order committing the child to the care of a suitable orphan's home or to the care of some reputable citizen of good moral character, or any State institution, department or agency authorized to provide protection or care for homeless dependent or neglected children."

In the early case of Ex parte Hughes, 88 Okl. 257, 213 P. 79, the rule is announced in the second paragraph of the syllabus as follows:

"An order of the county court permitting the adoption of an infant child is conclusive, so far as that court is concerned. Such court has no further jurisdiction in the matter."

The ruling in the Hughes case, supra, was followed by this Court in the recent case of In re Adoption of Davis, 206 Okl. 403, 244 P.2d 554.

In the case of Ex parte Walters, 92 Okl. Cr. 1, 221 P.2d 659, 661, our Criminal Court of Appeals made the following statements in the eighth paragraph of the syllabus:

"A child is primarily a ward of the state. The sovereign has the inherent power to legislate for its welfare, and to place it with either parent at will, or take it from both parents and place it elsewhere, and by provision of Tit. 10 O.S.A. § 110, the juvenile court may grant an association or individual with whom child is placed, authority to appear in adoption proceedings and assent to its legal adoption. This is true not only of illegitimate children, but also true of legitimate children."

Section 110 and Section 109, 10 O.S.1951, have to do with dependent and neglected children and Section 109 only became effective March 14, 1947. Section 44 prohibiting the adoption of a legitimate child without the consent of its parents was adopted in 1910. Under the well established rule of statutory construction that the last enactment of the Legislature takes precedence over prior enactments, in that it expresses the latest intent of the Legislature, we must conclude that it was the intent of the Legislature to permit dependent and neglected children to be placed with the Child Welfare Division of the Department of Public Welfare with the power of adoption, as it is a department or agency authorized to provide protection or care for homeless dependent or neglected children.

Our attention is called to Section 823, 20 O.S.1951, which provides in part as follows:

"Any decree or order of the court may be modified at any time; except in the case of a child who has been committed to a public institution or agency, unless committed on temporary order, in which latter case the judge shall set out in such temporary order his reasons therefor. * * * Laws 1949, p. 199, § 25, as amended Laws 1951, p. 55, § 1."

The order of April 4, 1953, certainly commits the children involved to a "public institution or agency", and expressly makes it a permanent order with no reservation of further authority and no intimation that the court intended to retain any further jurisdiction. That order expressly deprives the natural parents, who were present and consented thereto, of all future care and control of the children involved.

Since we conclude that Appellant is correct in his first and second propositions, we find it unnecessary to discuss the third question in regard to the court's jurisdiction to make its order of October 9, 1954, seeking to enforce its earlier order of August 13, 1954. If its order of April 4, 1953, was valid, and allowed to become final so that the parents were not entitled to notice of an intention to adopt, it necessarily follows that the order of October 9, 1954, seeking to enforce the order of August 13, 1954, vacating the original order of April 4, 1953, was not authorized.

We agree that it is unfortunate that it should ever be necessary to deprive a natural parent of the care and custody of his

or her child. However, it will be agreed that this is often necessary and for the best interest of the child, which is the paramount consideration. If the parents who have given up their children and consented to their adoption through the Department of Public Welfare, Child Welfare Division, were given the right to reclaim such children from their new homes to which they have become attached, a very serious condition of uncertainty would result and many of those able and willing to adopt children who have been found to be dependent and neglected would hesitate to assume a parenthood that might be ended at any time during the minority of the child by changed conditions and desires of natural parents.

The order of August 13, 1954, in cause No. 570, County Court of Latimer County, sitting as a Juvenile Court, and the order of October 9, 1954, vacating the order of April 4, 1953, are hereby reversed with instructions to enter judgment vacating the orders of August and October, 1954, and restoring its order of April 4, 1953, to full force and effect.

JOHNSON, C. J., and CORN, DAVISON and JACKSON, JJ., concur.

WELCH, J., concurring specially.

WILLIAMS, V. C. J., and BLACKBIRD, J., dissent.

WELCH, Justice (concurring specially).

It is argued by the parties that in this case some injustice has been done to the mother and father of these children.

As to that, I would point out that the result of this case is based upon three things: (1) The apparent consent of both the mother and father, as is pointed out in the majority opinion; (2) A solemn law enacted by the Legislature, and approved by the Chief Executive, which is binding on this court, and on all other citizens of the state; (3) A final judgment of a court of record, the County Court of Latimer County, Oklahoma, which judgment was not objected to nor appealed from, and which judgment is likewise binding on all the parties here involved.

The cause in the County Court was commenced by Wayne Russell, County Attorney, and the judgment recited in part as follows:

"Now on this 4th day of April, 1953, the same being one of the regular days of the April term of Court, this cause comes on for hearing upon the Petition of Wayne Russell, to declare James Albert Tindell and Frances Sue Tindell, dependent and neglected children and that *permanent custody* be given to the Division of Child Welfare, Department of Public Welfare of the State of Oklahoma, *for the purpose of custody and adoption."* (Emphasis added.)

Both the mother and father of these children appeared at that county court hearing and introduced their evidence. After the court heard all of the evidence presented, the final order was entered, and in further part it was recited therein as follows:

"The court further finds that the Division of Child Welfare of the Department of Public Welfare of the State of Oklahoma, is an association embracing in its objects the care of dependent and neglected children and further embraces in its object, and having authority under the laws of the State of Oklahoma, the placement of children such as James Albert and Frances Sue Tindell, *for adoption* or placing said children in an institution willing to receive them and the said Division of Child Welfare is willing to receive said children *and find a proper and suitable home in which to place said children for adoption,* or in an institution willing to receive said children, *and that said parents, Jessie Tindell and Mandy Tindell,* and all other persons *should be judicially deprived* of the care, custody, control, nurture and education of said children *and that they be forever barred,* restrained and enjoined from interfering in any manner in the care, control, cus-

tody, nurture and education of said children, and that they be deprived of any right, title or interest in, to and over the said James Albert and Frances Sue Tindell.

"The Court further finds that it is to the best interest of said children, that they be placed with some person, or association, should be given the complete care, custody, control, nurture and education of said children *with the right to place said children for adoption and to give written consent for adoption,* and in this connection the court finds that the Division of Child Welfare of the Department of Public Welfare of the State of Oklahoma, is a proper association or agency for this purpose." (Emphasis added.)

The concluding paragraphs of that judgment are copied, in the majority opinion and they disclose clearly that the parents were permanently deprived of the custody of these children, and that such custody was judicially given to the Division of Child Welfare for future adoption, and with full power to consent to the adoption of these children into a suitable family home or homes.

Both the mother and father, being present, and having participated in the trial, apparently consented and acquiesced in this final judgment as they did not question it or object to any part of it, or take any exception to it, or appeal therefrom.

In such an action or proceeding of course the prime matter to be considered is the interest of the children. It is unfortunate that cases arise wherein it is necessary for the County Attorney to start proceedings such as this, and necessary for the courts of the State to inquire into the situation of young children. But when such cases arise it is necessary and essential that public officials discharge their duty in the interest of such children, and in the interest of society. And when the evidence justifies it, and that is judicially determined, and established by fair and valid judicial decree, it is highly important and most necessary that diligent effort be made to find a suitable home for the nurturing and rearing of such children. When that is done the children are not deprived of parents, but they are furnished with parents and a home. When all this results from action or non-action of natural parents, and results apparently with the consent of natural parents, then an injustice might be done the children if these things were not accorded the finality given by law. I need not dwell on that further, as there is here no argument or contention that any wrong or injustice has been done to the children.

It is argued and contended that the county court judgment is void and should therefore be vacated. That argument and contention is fully answered and legally determined in the majority opinion. In that argument there is included the contention that this county court judgment at any time in the future, at will, could be vacated and that at any time in the future, at will, the adoption of the children into a proper home and family, however wholesome and beneficial to the children, could be disrupted and abolished. That would leave the home life of these children in constant jeopardy of disturbance and confusion throughout their minority. It is not right that the lives of children should be so dealt with, and in Oklahoma they cannot be so dealt with on account of the law, which is binding on every one, and which gives finality to this proceeding and to these adoptions, to the end that the situation and status of these children should remain settled and secure.

If the law is held to be otherwise, as is here contended for, it would be more difficult to place such needy children in good homes. Prospective adoptive parents would be more reluctant to adopt a child and promote the steadfast fixing of the new relationship of parent and child with constant devotion and attachment on both sides if former parents could thereafter harass the new family and, at will, have the adoption declared ineffective.

DAVISON, J., concurs in these special views.

WILLIAMS, Vice Chief Justice (dissenting).

I do not agree with the majority opinion herein and feel that it does a grave injustice to a mother who has now been permanently deprived of her children, and, in fact, even deprived of the right to any knowledge or information concerning the whereabouts or welfare of such children, for the sole and only reason that such mother was so unfortunate as to suffer a serious illness. I am convinced that the purpose for which the appellant Department of Public Welfare was created was primarily to render aid and assistance to those citizens of this state who have been beset by adversity and misfortune, and not for the purpose of dividing families and depriving mothers, who have been guilty of nothing more than having been ill, of their children. The petitioner herein suffered the misfortune of contracting tuberculosis and requiring hospital treatment therefor. At the very time she was faced with the necessity of returning to the hospital for treatment she was further beset by the conduct of her husband who threatened to take the lives of her two children and herself. Faced with such a situation, petitioner turned to appellant for aid and assistance in her time of trouble. The aid and assistance rendered, however, consisted of procuring an order of the county court which appellant now contends and the majority opinion holds had the effect of permanently and finally depriving petitioner of any and all rights whatever in regard to her children. Such opinion is in my judgment morally and legally wrong.

The majority opinion holds that an order of the county court declaring a child to be dependent or neglected and depriving the parents thereof of the custody of such child, which order is not appealed, is final and conclusive and deprives such court of any further jurisdiction in the matter regardless of the circumstances which may thereafter develop. This court has held exactly the contrary, however, in the case of In re Greenback, 207 Okl. 30, 246 P.2d 733, 736, wherein the following language was used:

"It is true that the time for an appeal from the order finding the children to be neglected and granting the custody of the children to Grace Dixon had expired at the time Audrey Greenback, now Newman, filed her application to have the custody of her children restored to her but the county court, we think, under its authority derived from the Statutes Title 10, Secs. 101–114, O.S.1951, and in view of our liberal rule of construction of pleadings when attacked by a demurrer, had jurisdiction to consider the Mother's application or petition asking for an order granting her the custody of her children. Her application was sufficient to invoke the jurisdiction of the court and withstand the demurrer. In it she alleged that since the former order her circumstances had changed and that she had reformed and was now a fit and proper person with a home for her children and that she was morally and financially able and willing to provide and care for them; that they were not being properly cared for by their present custodian, etc.

"This application makes no complaint as to the original order finding the children neglected and placing them in Grace Dixon's custody. It is not to review or reverse the former order but is to procure a new judgment on a new state of facts. McFall v. Simmons, Judge, 12 S.D. 562, 81 N.W. 898.

"It is urged by respondent that the Act, Title 10 O.S.1951, Sections 101–114, made no provision for the continuing jurisdiction of the court except in delinquency cases. Section 101 of the Act defines 'dependent child', 'neglected child' and 'delinquent child'. Section 114 provides:

" 'This article (Title 10, Sections 101–114, O.S.1951) shall be liberally construed, to the end that its purpose may be carried out, to wit: That the care and custody and discipline of the child shall approximate, as nearly as may be, that which should be given by its parents * * *.'

"See Ex parte Lewis, 85 Okl.Cr. 322, 188 P.2d 367, wherein it was held that the Juvenile Court Act should be liberally construed so as to effect its hu-

manitarian objects. The article composing the Juvenile Court Act does not specifically or expressly provide for a minimum cessation or duration of the wardship, or for further or other proceedings except as to delinquent children as in Section 112. However, the article does not expressly prohibit further proceedings in cases involving dependent and neglected children and a reasonable liberal construction of the entire article would so provide where necessary to properly safeguard a child's best interests and welfare. In 43 C.J.S. Infants, § 8, it is said:

" 'It is the trial court's duty to ascertain all the facts and to make such investigation as in its judgment will assist in reaching a proper conclusion as to the person who is best qualified to furnish a proper environment and home for the child * * *. The court should make such orders as to the infant's custody as will properly safeguard its best interests and welfare. An order awarding the custody of a child merely adjudicates the rights of the parties on the question of which party should have the custody, and is not res judicata with respect to future acts and conditions. Furthermore the court cannot establish permanent custody of the infant, and thereby assume to foreclose future judicial consideration of the action in the premises; any order or decree affecting his custody is subject to future control and modification by the court, as subsequent conditions and circumstances may require for his welfare, but an order decreeing custody may not be changed or modified unless an adequate cause therefor arises from changed conditions.'

"This wholesome rule, we think, is applicable to the proceedings of our county courts when performing the duties of a Juvenile Judge.

"Ordinarily the court may change or modify its order at any time. 43 C.J.S., Infants, § 100; Ex parte Woodworth, 92 Okl.Cr. 235, 222 P.2d 528;

State ex rel. Hedrick v. Hartford Accident & Indemnity Co., 154 Kan. 79, 114 P.2d 812; In re Houser, 166 Kan. 48, 199 P.2d 499; New Mexico Department of Public Welfare v. Cromer, 52 N.M. 331, 197 P.2d 902.

"In 43 C.J.S., Infants, § 100, subdivision b. Period of Detention, p. 261, it is stated:

" 'An adjudication committing a child because of neglect or failure of the parent to provide for it does not deprive the parent of his right to the custody of the child if he subsequently becomes competent and willing to care for it properly, and in such case the court, in the exercise of its * * * equitable power, may restore the child to the custody of its parent, even though he had notice of, and appeared in, the proceeding for commitment, and no appeal has been taken from the order of commitment and the time for appealing has expired, and although the institution does not consent to the child's discharge. In determining whether custody of the child should be returned to the parents, the physical and moral welfare of the child is the paramount question, and restoration may be refused where it would not be to the child's benefit. * * *' (See cases under footnotes of this section.)

"From the rules herein announced, which have been tested and tried through the years, and from a study of comparative law, it is seen that these precedential rules follow substantially the same pattern in the various systems of jurisprudence, and, unless expressly supplanted by statutory enactments, or prevented by statutory inhibitions, we are constrained to apply them in cases concerning infants involving such circumstances as in the instant case."

The above quoted language of the Greenback case clearly demonstrates the error of the holding of the majority opinion.

There is yet another reason, however, why the majority opinion is in error. Even if the majority opinion is correct in hold-

ing that a judgment of the county court such as is here involved can only be set aside or modified by complying with sections 1031 and 1033, 12 O.S.1951, it does not follow that the county court here involved had no jurisdiction to vacate the order here involved. 12 O.S.1951 § 1038, provides that a void judgment may be vacated at any time, on motion of a party, or any person affected thereby. Therefore if the order of the county court which petitioner sought to have vacated was void, then certainly such court has jurisdiction to vacate such order. In my opinion, the order of the county court of April 4, 1953, which purported to grant permanent custody of petitioner's minor children to respondent and to authorize respondent to consent to the adoption of such children by someone else, is absolutely void on its face. The pertinent statutes, 10 O.S.1951 §§ 109 and 110, are set out in the majority opinion. It will be noted that section 109 provides that the court may order a dependent or neglected child committed to the care of a suitable orphans home, some reputable citizen, or any State institution, department or agency, or some association willing to receive it, or may cause the child to be placed in a public hospital or institution or in a private hospital or institution. It should further be noted, however, that by virtue of section 110, it is only where the court awards a child to the care of an association or individual (as contrasted with a state institution, department or agency), that the child becomes the ward of and subject to the guardianship of the association or individual to whose care it is committed, and it is only such association or individual that may assent to the adoption of such child. Respondent is, of course, a state department or agency and not an association or individual. There is absolutely no authority, either express or implied, for a county court to award to respondent, a state agency, the permanent custody of a dependent or neglected child or to transfer to such agency all rights of a parent, including the right of consenting to its adoption by someone else. Since (as is stated in the majority opinion) the order of April 4, 1953, purports to commit the children involved to a state agency on a permanent basis and to transfer to such state agency all rights of a parent, including specifically the right to consent to the adoption of such children by someone else, and since there is absolutely no authority for the making of such an order, it necessarily follows that such order is void on its face and may be vacated at any time.

There is yet another error in the majority opinion which I feel is worthy of note. The opinion holds that no notice to or consent of petitioner in this case is necessary to legalize the adoption of her children by someone else and that the consent of respondent is all that is necessary. I have already pointed out that there is absolutely no authority for respondent to grant the necessary consent to the adoption of anyone. I wish to further point out, however, why I believe that no adoption of a child of this petitioner can be valid without the consent of petitioner. 10 O.S.1951 § 44, which is cited in the majority opinion, provides in so far as is pertinent here, that consent is not necessary from a parent who has been judicially deprived of the custody of the child on account of cruelty or neglect. The majority opinion notes that petitioner has been judicially deprived of the custody of her children and therefore concludes that her consent is not necessary to the valid adoption of such children. The majority opinion fails to note, however, that petitioner was not deprived of the custody of her children on account of either cruelty or neglect. The order of the county court purporting to deprive petitioner of the custody of her children contains detailed findings of fact and nowhere in such order do either of the words cruelty or neglect appear. On the contrary, such order specifically finds only that petitioner was ill and that the children were dependent and should be made wards of the court. It should therefore be readily apparent that petitioner has not been judiciously deprived of the custody of her children on account of cruelty or neglect, and that her consent is therefore necessary before any valid adoption of such children can take place.

The majority opinion attempts to justify the obvious weakness of its holding with reference to the necessity of the consent of petitioner to any valid adoption of her children by stating in the last paragraph on page 9 thereof that sections 110 and 109, 10 O.S.1951, have to do with dependent and neglected children and that section 109 only became effective on March 14, 1947, whereas section 44, prohibiting the adoption of a legitimate child without the consent of its parents, was adopted in 1910, and that under the well established rule of statutory construction the last enactment of the legislature takes precedence over prior enactments. The rule of statutory construction so announced is undoubtedly correct, but the facts with respect to the time of the adoption of the three sections involved are just the opposite of those stated in the majority opinion. Section 109, supra, may be found at page 188, Laws of 1909, and section 110, supra, may be found at page 189, Laws of 1909. Although there have been minor amendments to section 109 from time to time, the latest being in 1947, it should be noted that section 109 has nothing to do with consent to adoption, as only section 110 contains any provision authorizing any one other than a parent to consent to an adoption. Section 110, however, was adopted in 1909 and remains to this day in the same form in which it was adopted. If then, as stated in the majority opinion, section 44, supra, was adopted in 1910, which appears to be the case, it, rather than section 110, is the later expression of the legislature and must be held to control.

I am of the opinion that one of the greatest acts of injustice that could be perpetrated on a sick mother has been done in this case and that the order of the county judge who recognized the mistake he had made and attempted to restore these children to their mother should be affirmed. I therefore dissent.

I am authorized to state that Mr. Justice BLACKBIRD concurs with the views herein expressed.