In the Matter of Sylvia A. SUTHERLAND, Marzell Sutherland, Luther Sutherland, and Donnie Sutherland, Dependent Minor Children.

The TIPTON HOME, a Charitable Corporation, Plaintiff in Error,

v.

Billie CARPENTER, formerly Sutherland, Defendant in Error.

No. 37253.

Supreme Court of Oklahoma.

July 17, 1956.

Rehearing Denied Sept. 11, 1956.

Chamberlin & Slagle, Frederick, for plaintiff in error.

Arnett & McDaniel, Mangum, for defendant in error.

HALLEY, Justice.

On March 18, 1953, Billie Sutherland, now Carpenter, filed in the County Court of Greer County a petition alleging that she was the mother of five minor children whose father had been killed in November, 1952; that she had no property but had been drawing social security in an effort to care for the children, but that such payments were not sufficient to properly provide for her children; that The Tipton Orphans Home (now The Tipton Home) of Tipton, Oklahoma, had agreed to accept and care for the children and that she was willing for the Home to have the children and care for them but only on condition that if the Home should find a suitable home for the children, it may give its consent for the adoption of all five children as a unit, that is to a single home. She prayed that the court make an order placing the children in The Tipton Home.

On the same day the petition was filed the court made an order giving the five children to the Home upon the condition above mentioned. In her petition the mother stated that she had been drawing social security for the children and assigned all her interest in social security benefits for said children and waived her claim thereto.

July 22, 1953, the mother gave her written consent that the youngest child be adopted by Charles A. Asper and wife and the court amended its order of March 18, 1953, and authorized the Home to agree to the adoption of this child.

On November 29, 1955, the mother, now Billie Carpenter, filed a petition for an order releasing the remaining four children from The Tipton Home and awarding their custody to her. She alleged that she had remarried on January 31, 1955, and that she and her husband lived on a farm near Russell, Oklahoma, and that they were amply able and willing to have the children live with them; that they have a proper and suitable home and that by reason of changed conditions she prayed for an order discharging the children from The

Tipton Home and giving her their full custody.·

Notice of hearing this petition was given. The Tipton Home demurred to the petition upon the ground that the petition did not state a legal cause of action and that the court did not have authority or jurisdiction to enter the order prayed for.

The demurrer was overruled and The Tipton Home was ordered to file a response instanter, which was done. The principal allegation in the response being that the children had been adjudged dependent and neglected children by the court's order of March 18, 1953, which was not appealed from and had become final, and that the court now has no jurisdiction to vacate that order or grant the petition of the mother, and that the court now has no jurisdiction of the parties nor the subject matter.

■■ On December 14, 1955, the matter was called for trial. Before discussing the evidence we wish to state that in our opinion the 1955 Act of the Twenty-Fifth Legislature, being Chapter 5, Title 10, Session Laws of 1955, 10 O.S.Supp. § 109.1 et seq., in regard to "Dependent and Delinquent Children" is not applicable to the case before us because Section 1 of that Act provides that no judge of any county or juvenile court shall commit any "dependent or neglected child to an orphanage owned and operated by the State of Oklahoma, nor to any orphanage or home receiving or accepting any funds or monies from the State of Oklahoma, unless such commitment be without reservation as to the adoption of such child * * *", except where hardship is involved, the court may commit on a temporary basis not to exceed ninety days. The 1955 Act was doubtless enacted for the purpose of avoiding controversies between State supported homes and parents who change their mind and desire to take back their children after adoption or adoption plans have been made by such homes.

We have considered all of the evidence and find that the mother of the children has remarried and lives in a comfortable home on the farm of the mother of her husband; that she attends church regularly; that they are able financially to furnish the children proper care and support and both the mother and step-father desire to have the children with them and it appears from their testimony that the children are very anxious to be with their mother.

The evidence produced by the Home is not all favorable to the petitioner but it does not show that she would be an improper mother of her children.

From the evidence The Tipton Home appears to be a very worthy institution which is well managed. It takes good care of about two hundred children, gives them practical training in farm work of all kinds and the care of livestock. The girls receive training in home economics, cooking and sewing in a practical way. Qualified teachers instruct these children up through the sixth grade and as a part of the Tipton School System.

The Tipton Home makes a practice of returning children to their parents but requires proof that the parents have the right kind of a home for the children. The Home has an investigation made by the State Welfare Department before releasing any of its children. There is no criticism in the record as to The Tipton Home or any of its operations under the general supervision of the Church of Christ.

■ The rule is well established in this State that the court, in considering the question of the custody of minor dependent children must give first consideration to the best interest of the child. Section 11, 30 O.S.1951, provides in this respect as follows:

"In awarding the custody of a minor, or in appointing a general guardian, the court or judge is to be guided by the following considerations:

"1. By what appears to be for the best interests of the child in respect to its temporal and its mental and moral welfare; and if the child be of sufficient age to form an intelligent

preference, the court or judge may consider that preference in determining the question."

■ The Tipton Home contends that since the County Court, sitting as a juvenile court, entered an order depriving the natural parent of the care and custody of dependent and neglected children, the court is without authority, unless it reserves the power to alter or amend such order, or jurisdiction to vacate such an order after it has become final. Both parties cite In re Greenback, 207 Okl. 30, 246 P.2d 733, and the later case of In re Tindell, Okl., 292 P.2d 1022. As pointed out in the Tindell decision an entirely different state of facts was presented in the Greenback case, supra. In that case the court had found certain children to be neglected and dependent children and took them from the custody of their mother. The court then awarded the care of said children to Grace Dixon of Miami, Oklahoma, with the specific provision that they should not be removed from the City of Miami and that Grace Dixon should not be the guardian of either the person or estate of said children and that they should not be the wards of the said Grace Dixon within the meaning of Section 110, Title 10 O.S.A. It further expressly provided that they should remain in the care of Grace Dixon until further orders of the court.

The mother of the children then moved that she be granted their custody. Grace Dixon contended that the order giving the care and custody of the children to her, as above stated, was a final order because no appeal was taken therefrom and that the court had no jurisdiction to reverse, vacate or modify the judgment of the court as provided by 12 O.S.1951 § 972. It is clear that the facts in the Greenback case are entirely different from the facts in the Tindell case. Many of the questions considered in the Greenback case simply constitute dicta and have no bearing on the issues before the court in this case.

In the Tindell case, supra, the minor children had been awarded to the Child Welfare Division of the Department of Public Welfare of the State of Oklahoma and the father and mother were expressly deprived of their care and control and judicially deprived of any right, title or interest in, to or over said children. The facts in that case show that one of the children had been adopted into a good home and that the other one was then residing in a home preliminary to adoption. No provision was made in the order of the court granting care and custody to the Division of Child Welfare and this court held that an order of the County Court, sitting as a juvenile court, permitting the adoption of an infant child is conclusive so far as that court is concerned and that the court has no further jurisdiction in the matter. The Department of Public Welfare had the authority to consent to their adoption with no reservations whatever.

In the case before us the parent of the minors stated in her original petition that she hoped conditions would change in the future so that she might again have the care and custody of her children and made their entry into The Tipton Home a conditional one in that the application prayed for, and the order granted the reservation that said children should only be adopted as a unit. This reservation was later recognized when the mother went into the court and gave her written consent to the adoption of the youngest child by the Aspers.

We have examined carefully all of the evidence and find that the petitioner is now a suitable person to have the care and custody of her minor children and that she and her husband are fully able to provide for them proper care and a suitable home. The Tipton Home had had these children from March 18, 1953, until the 14th of December, 1955. We think that the County Court of Greer County acted wisely and properly in observing the reservation of the petitioner wherein it provided that the children should not be adopted except as a unit.

The Tipton Home contends that a juvenile court is one of limited jurisdiction and has only such jurisdiction as given by the statutes. We agree with this contention, but certainly the original order giving the care and custody of these children to The Tipton Home, providing that their adoption should only be as a unit, shows that their commitment was conditional and the action of the mother in consenting to the adoption of one child and the recognition of such provision by the court clearly shows that the court was of the opinion that it did not have full jurisdiction of the care and custody and adoption of these children.

We find no merit in the contention that because the children are in a Home in Tillman County that the County Court of Greer County may not continue to exercise jurisdiction over their care and custody. Such jurisdiction might be transferred to the County Court of Tillman County but no request for such transfer has been made and we think that the County Court of Greer County continued to have jurisdiction under the circumstances presented.

We find no error in the order of the juvenile court in ordering the children returned to the care and custody of their mother and her present husband. The court required them to give a bond for the return of the children to the custody of the court. We think that had the children been adopted while they were inmates of The Tipton Home, a different situation would have prevailed. They had not been adopted, but were simply in the care and custody of The Tipton Home with the consent of their mother who had inserted in the order awarding their care and custody to The Tipton Home, a mandatory provision with respect to their adoption by the Home.

The order of the court is hereby affirmed.

JOHNSON, C. J., and WELCH, CORN, BLACKBIRD, and HUNT, JJ., concur.

WILLIAMS, V. C. J., concurs in result.

Rehearing Denied Sept. 11, 1956.