Dear Commissioner Tyree
¶ 0 This office has received your request for an Opinion in which you asked, in effect, the following question:
 Does 85 O.S. 174 (1991) create a special three percent (3%) taxation rate for political and municipal subdivisions subject to the Workers' Compensation Act, notwithstanding the general five percent (5%) rate mandated by 85 O.S. 173 (1995)?[1]
¶ 1 To encourage employment of previously impaired workers, in 1943 the Special Indemnity Fund was created to relieve employers from liability for disabilities that do not result from work-related injuries. See Special Indemnity Fund v. Bedford,852 P.2d 150 (Okla. 1993). For the maintenance of a Special Indemnity Fund, Section 85 O.S. 173 of Title 85 established that:
 Each mutual or interinsurance association, stock company, the State Insurance Fund, or other insurance carrier writing workers' compensation insurance in this state, and each self insurer, shall pay to the Oklahoma Tax Commission a sum equal to five percent (5%) of the total compensation for permanent total disability or permanent partial disability paid out or payable during each quarter-year period of the calendar year.
85 O.S. 173(A) (1995).
¶ 2 As the State and its political and municipal subdivisions are required, under 85 O.S. 2b (1991), to maintain workers' compensation insurance either through an insurer or as a self insured entity; they, or their insurers, have been required to pay the award under the general mandate of 85 O.S. 173 (1995). This obligation has gone unquestioned until the percentage, originally one percent (1%) in 1943, two percent (2%) in 1977, and three percent (3%) in 1985, was changed to five percent (5%) in 1993.
¶ 3 The issue lies in the interaction of Section 173 and Section 174, which provided that:
 Every political or municipal subdivision of the state, covered by the provisions of the Workers' Compensation Act, including counties, cities, and towns, each shall provide sufficient funds in its annual estimate of the needs based on the total compensation paid out or benefits or payments in lieu thereof by such political or municipal subdivision during the prior fiscal year, to pay the amount due under the Workers' Compensation Act for the use and purpose of such Special Indemnity Fund, an amount equal to three percent (3%) of the amount of compensation awards for permanent total disability or permanent partial disability made by the Court for all employees employed by them.
85 O.S. 174 (1991).
¶ 4 As in Section 85 O.S. 173, the percentage stated in Section 174 began-at one percent (1%) in 1943, and tracked the changes of Section 173 to (2%) in 1977 and three percent (3%) in 1985. However, until changed within this last legislative session, Section 174 remained unaltered when Section 173 was changed to five percent (5%) in 1993. Thus, an apparent conflict was created between the percentages stated in Sections 173 and 174.
¶ 5 The court has a duty in construing potentially conflicting statutes to determine the intent of the legislative body, and as far as practicable, to reconcile the different provisions of statute, to make them consistent and harmonious, giving sensible and intelligent effect to each. See, In re Farmers' State Bankof Ames, Oklahoma, 74 P.2d 1166 (Okla. 1937). However, where it is not possible and conflict exists, "the last enactment of the Legislature takes precedence over prior enactments in that it expresses the latest intent of the Legislature." In re Tindell,292 P.2d 1022, 1028 (Okla. 1955); 75 O.S. 22 (1991).
¶ 6 As the question suggests, the different percentage in Section 174 may be viewed as an exception to the general tax[2] established by Section 173. However, there are significant issues raised by this construction. First, though Section 174 may establish a different percentage for a political subdivision, it does not do so for an insurer of a political subdivision. This leads to the absurd result that a self-insured political subdivision may avail itself of the three percent (3%) award obligation, but a political subdivision insured by the State Insurance Fund or other workers' compensation carrier would still fall under the five percent (5%) award obligation of Section 173.
¶ 7 Under Article X, Section 5 of the Oklahoma Constitution, "Taxes shall be uniform upon the same class of subjects." Further, the Oklahoma Supreme Court has stressed that where taxes are involved, the preferred statutory construction should be "free from discriminatory effect" and "not `operate to the advantage of some taxpayers and to .he disadvantage of others."'Neumann v. Oklahoma Tax Commission, 596 P.2d 530, 532 (Okla. 1979) (citation omitted). Thus, interpreting Section 174 as establishing a separate special taxation rate for political subdivisions, would raise serious constitutional questions. Rather, the intent of Section 174 appears to require political and municipal subdivisions to properly plan for such expenses within their budget requests.
¶ 8 As stated earlier, where conflict exists, "the last enactment of the Legislature takes precedence over prior enactments, in that it expresses the latest intent of the Legislature. "In re Tindell, 292 P.2d 1022, 1028 (Okla. 1955). In this instance, the latest expression of legislative intent as to the percentage established for compensation awards for permanent total disability or permanent partial disability for the Special Indemnity Fund is the 1993 amendment to Section 173 providing for an award percentage of five percent (5%).
¶ 9 It is, therefore, the official Opinion of the AttorneyGeneral that:
 Title 85 O.S. 174 (1991) did not create a special three percent (3%) taxation rate for political and municipal subdivisions of the State subject to the Workers' Compensation Act.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
KEVIN NELSON ASSISTANT ATTORNEY GENERAL
[1] During the pendency of this request, the passage of Senate Bill 1310 raised the percentage in Section 174 of Title 85 to five percent (5%) of any compensation awards for permanent total disability or permanent partial disability paid by political or municipal subdivision of the State for the benefit of the Special Indemnity Fund. Thus, this Opinion is limited to the impact of the potential conflict between Sections 85 O.S. 173 and 85O.S. 174 which existed from September 1, 1993, until the effective date of 85 O.S. 174 (1996), June 14, 1996.
[2] In Special Indemnity Fund v. Weber, 895 P.2d 292 (Okla. 1995), the Supreme Court of Oklahoma found that the five percent (5%) obligation imposed upon the award of a permanent partial or permanent total award constituted a tax.